# Staunton.

## FLETCHER POWERS, ET AL. V. COUNTY SCHOOL BOARD OF DICKENSON COUNTY.

September 22, 1927.

Absent, Prentis, P.

1. SCHOOLS AND SCHOOL DISTRICTS—*Joint School Building for Two Districts under Section 701 of the Code of 1919—Use of Funds for Joint Building Raised Under a Special Act not Specifying Such Use—Conflict Between Section 701 of the Code of 1919 and Special Act of 1926, Chapter 194—Case at Bar.*—Acts of 1926, page 338, authorized Dickenson county to borrow money not in excess of $125,000.00 for school purposes and issue bonds therefor. The act specifically provided for the application of the proceeds arising from the sale of the bonds, allotting "not in excess of thirty-nine thousand dollars in paying off and discharging valid outstanding indebtedness of Sand Lick school district, and in the repair or construction of school buildings in said school district, not in excess of thirty thousand dollars, in paying off and discharging valid outstanding indebtedness of Willis school district, and in the repair or construction of school buildings in said school district."

   *Held:* That no part of the funds allotted by the act to Sand Lick district could be used for the erection of a joint school building for Sand Lick and Willis school districts in the Willis district, under section 701 of the Code of 1919.

2. SCHOOLS AND SCHOOL DISTRICTS—*Joint Schoolhouses—Use of Funds Derived from a Special Act—Conflict Between Special Act and General Law.*—Any funds available for district school purposes may be appropriated under section 701 of the Code of 1919 to build joint schoolhouses, from whatever source they may be derived, whether under a special act or under any general acts providing methods for raising funds for district school purposes. But this is only true if the special act does not specifically provide how the funds derived from the bond issue under the act should be appropriated. Where the special act is full and complete in itself and specific as to the appropriation of the funds derived from it, the act cannot be pursued for the purpose of raising funds and when they are raised then aban-

doned and a provision of the general law applied as to the allocation of the funds, when there is a conflict between the general law and the special act upon the question of allocation.

3.  STATUTES—*Construction—Presumption that Legislature has Full Knowledge of the Law as it Stands.*—When the legislature comes to pass a new law or to amend an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal.

4.  STATUTES—*Construction—Special or Local Statutes—Strict Construction.*—Special or local statutes are usually passed at the instance of parties interested, and for the benefit of particular persons rather than for the general welfare, and are therefore to be construed strictly, both as to the extent of the territory in which they operate and also as to the powers granted by them.

5.  STATUTES—*Special, Local and Private Laws—Conflict Between General Law and Special or Local Law.*—When there is a conflict between the provisions of a special or local act and the general law on the subject, the special or local act is controlling.

6.  SCHOOLS AND SCHOOL DISTRICTS—*Funds for School Purposes—General Laws and Special Act.*—A special act authorizing a county school board to borrow money and issue bonds for school purposes is not exclusive as a means of raising funds for school purposes. The county may proceed under the general provisions of the Code to raise funds for school purposes. But if it elects to proceed under the special act, it is confined entirely to the provisions of that act, where they are complete within themselves, and the special act must be followed in its entirety once it is put into operation.

7.  SCHOOLS AND SCHOOL DISTRICTS—*Funds for School Districts—Constitutionality of Special Act Pledging Full Faith and Credit of the County but Providing that the Bonds Shall be Payable by the School Districts.*— A special act authorizing the county school board of a county to borrow money and issue bonds therefor is not unconstitutional because the bonds are payable by the school districts while the full faith and credit of the county are pledged to their payment.

Appeal from a decree of the Circuit Court of Dickenson county. Decree for defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*B. T. Wilson* and *Burns, Kidd & Griffith,* for the appellants.

*E. J. Sutherland, Jno. W. Flannagan, Jr.*, and *Morison, Morison & Robertson*, for the appellees.

Chichester, J., delivered the opinion of the court.

Fletcher Powers and twenty-six other citizens of Sand Lick district in Dickenson county are here complaining of a final decree of the Circuit Court of that county dissolving a temporary injunction which had been theretofore awarded them pursuant to the prayer of their bill: "that a decree be entered herein enjoining and restraining the said county school board, its members and officers thereof, from issuing and selling the said bonds of the county of Dickenson, Virginia; that they be enjoined and restrained from creating said illegal indebtedness and from misappropriating and diverting the funds and effects of the said county of Dickenson," and for further relief, etc.

The bonds, issuance of which was sought to be enjoined, were provided for by a special act of the General Assembly of Virginia, approved March 18, 1926, Acts 1926, page 338. That act provides that the county school board of Dickenson county be authorized to borrow not in excess of $125,000.00 and to issue at one time or from time to time and sell its bonds, the proceeds to be used in paying off and discharging valid outstanding indebtedness for county school purposes, the indebtedness of various magisterial school districts of the county, and to provide for the repair and construction of certain school buildings in the several school districts.

The act then proceeds to specifically provide for the application of the proceeds arising from the sale of the bonds as follows:  "Of the proceeds of said bonds not in excess of fifteen thousand dollars shall be applied in

paying off and discharging valid outstanding indebtedness for county school purposes; not in excess of three thousand dollars in paying off and discharging valid outstanding indebtedness of Clintwood number one school district, and in the repair or construction of school buildings in said school district; not in excess of fourteen thousand dollars in paying off and discharging valid outstanding indebtedness of Clintwood number two school district, and in the repairs or construction of school buildings in said school district; not in excess of twenty thousand dollars in paying off and discharging valid outstanding indebtedness of Ervington school district, and in the repair or construction of school buildings in said school district; not in excess of four thousand dollars in paying off and discharging valid outstanding indebtedness of Kenady school district, and in the repair or construction of school buildings in said school district; not in excess of thirty-nine thousand dollars in paying off and discharging valid outstanding indebtedness of Sand Lick school district, and in the repair or construction of school buildings in said school district; not in excess of thirty thousand dollars in paying off and discharging valid outstanding indebtedness of Willis school district, and in the repair or construction of school buildings in said school disstrict.''

The bonds are made a lien upon the property in the district in which the proceeds are to be expended, but the full faith and credit of the entire county are pledged. The act then provides for levying a tax on all the property of the county subject to levy for county school purposes and for a levy of a tax upon all property subject to tax for district school purposes in each of the school districts above named to pay interest on the bonds and to provide for a sinking fund.

The bill filed by the complainants charges: "That the said county school board of Dickenson county intends to and is proceeding to divert, misappropriate and wrongfully expend in the construction of a building in Willis school district a large part of the said $39,000.00 so allotted in said purported special act to the said Sand Lick district."

This charge of an alleged diversion of funds, arising from the proposed sale of bonds specifically allotted by the special act, *supra,* to Sand Lick district for the erection of school buildings in that district, from this purpose for use in the construction of a school building for the joint use of Sand Lick and Willis districts, constitutes the bone of contention in the case.

The facts with reference to what .was alleged as a diversion of funds were agreed to, as follows: "It is agreed by and between counsel for the complainants and defendants that the following statement may be read, treated and considered as evidence in this case:

"That the defendant, pursuant to section 701 of the Code, with the consent and approval of the State Board of Education, has established a joint school to be owned, managed and used jointly by the Sand Lick and Willis school districts in Dickenson county, and that pursuant to said section 701 of the Code the school building will be actually located in what is now the Willis school district, but only about three or four hundred feet from what is now the Sand Lick School district line. There is a county road running through the Sand Lick district that comes out at the location of the schoolhouse in question, which will accommodate the children living on Nealy Ridge and Back Bone Ridge. There is another road from Sand Lick district coming down Russell Ford and this road also comes by the proposed schoolhouse, but leaves the said Sand

Lick school district line about one mile from the schoolhouse, and there is more travel on this road than there is on the Nealy Ridge-Back Bone Ridge road. The orders heretofore entered establishing the lines of the Willis and Sand Lick districts are to be read and considered by the court.

"The joint school will be erected out of funds derived under the special act in question, being House Bill No. 377, as follows:

"Willis school district is to contribute, out of the $30,000.00 going to it from the bonds sold pursuant to said act, the sum of $20,000.00, and Sand Lick district is to contribute, out of the $39,000.00 going to it, from bonds sold under said act, the sum of $20,-000.00. The sum of $40,000.00 thus raised is to be used in the construction of said joint schoolhouse. The other funds going to the said Sand Lick and Willis districts from bonds sold under said act are to be used as follows:

"Sand Lick school district: In paying off and discharging valid outstanding indebtedness of Sand Lick school district $6,000.00, in the repair of school buildings $5,000.00, and in the construction of other school buildings $8,000.00.

"Willis school district: In paying off and discharging valid outstanding indebtedness of Willis school district $1,000.00, in repair of school buildings $4,-000.00, and in the construction of other school buildings $5,000.00."

The trial court held that this was not a diversion of the funds allotted by the act to Sand Lick district, for the reason that, in spite of the fact that the special act under which the bonds were to be issued provided for the application of the proceeds of the sale of such bonds, the provisions of section 701 of the Code, referred to

in the agreed statement, and which is a general statute appearing in the Code under the title "Public Free Schools for Counties—Literary Fund" may be invoked, and the fund used as provided by that section.

Section 701 appears in the margin.*

[1, 2] The learned trial judge, in effect, holds that any funds available for district school purposes may be appropriated under section 701 to build joint school-houses, from whatever source they may be derived, whether under the special act, under which the bonds in this case are to be issued, or under any of the general acts providing for methods of raising funds for district school purposes. This would be true if the special act did not specifically provide how the funds derived from the bond issue under the act should be appropriated, but as the special act is full and complete in itself and very specific as to the appropriation of the funds derived under it, the act cannot be pursued for the purpose of raising funds and when they are raised then abandoned and a provision of the general law applied as to the allocation of those funds, when there is a conflict between the general law and the special act upon the question of allocation.

As has been seen, the general law provides numerous means of securing funds, which may, in general, be termed district school funds. For example, section 740(a), of the Code (1924) provides for raising funds by taxation. Section 681 provides for borrowing funds from the county school board held by gift or devise. Section 681(a), provides for borrowing money from

*Section 701. The school boards of two adjacent districts, whether in the same or different counties, shall, with the consent of the State Board of Education, have the power to establish joint schools for the use of both districts; and shall have the power to purchase, take, hold, lease, and convey school property, both real and personal, in either district for such joint schools; and the title to all such property acquired for such purposes shall vest jointly in the school boards of such adjacent districts, and such schools shall be managed and controlled by the said boards jointly.

any source.   Sections 757, 758 and 759 provide for borrowing funds from the State Board of Education out of the literary fund.   Section 765 provides for a bond issue upon action by the qualified voters in an election.   All these are general statutes and funds raised by means of any of them become district school funds and under general law must be expended in the school district for which they are raised, but with the exception that under certain conditions, by virtue of another general provision, section 701, *supra*, any of such funds may be made available for construction of joint schoolhouses as provided by section 701.

The special act, enacted by the General Assembly, with all these general provisions, and section 701, in existence at the time, not only negatives the idea that funds raised under the special act were subject to the provision of section 701, by the strongest implication, but the express language of the act is in direct conflict with the provisions of section 701.   It not only provides, as an inspection of the act discloses, that certain designated amounts shall be used in certain districts, without stating that any of such amounts shall be subject to the provision of the general law, section 701, which we think by implication excludes the application of section 701 to any of the funds, but out of double precaution it expressly declares that not in *excess* of the designated funds for the respective districts mentioned shall be used in any of them.

In *Nebraska Dist., etc.* v. *McKelvie*, 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688, this is said: "The legislature must be presumed to have in mind all previous legislation upon the subject, so that in the construction of a statute we must consider the preexisting law and any other acts relating to the same subject."

[3] In *School Board* v. *Patterson*, 111 Va. 482, 69

S. E. 337, this appears: "When the legislature comes to pass a new law or to amend an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal."

The special act, therefore, having provided the means of raising the funds, and specifically their allocation, is complete in itself and, as is clear, is in conflict with section 701 of the Code with reference to the allocation of the funds. It is equally clear that this being so, the special act cannot be resorted to to raise the funds, and the general law resorted to, to appropriate them.

[4] Special acts or local statutes are strictly construed. In 36 Cyc. 1190, we find this: "Special or local statutes are usually passed at the instance of parties interested, and for the benefit of particular persons rather than for the general welfare, and are therefore to be construed strictly, both as to the extent of the territory in which they operate and also as to the powers granted by them."

[5] And when there is a conflict in the provisions of a special or local act and the general law on the subject the special or local act is controlling. *State* v. *Preston*, 103 Or. 631, 206 Pac. 304, 23 A. L. R. 418.

[6] It is true as stated above, that Dickenson county may have proceeded under any of the general provisions to raise funds for school purposes, but having elected to proceed under the special act, it is confined entirely to the provisions of that act, complete as they are within themselves, and the act cannot be carried fully into effect under the provisions of a general statute in conflict with it. In other words, the special act is not exclusive as a means of raising funds for school purposes, but it must be followed in its entirety once it is put into operation.

It was error, therefore, for the trial court to dissolve the injunction insofar as it restrained the school board from erecting a joint school building in Willis school district for that district and Sand Lick district.

[7] There was no error in dissolving the injunction insofar as it enjoined the school board from issuing the bonds in pursuance of the provisions of the special act, as the act is not unconstitutional upon the ground that the bonds are payable by the school districts while the full faith and credit of the county are pledged to their payment.  See *Kirkpatrick* v. *Board of Supervisors of Arlington County*, 146 Va. 113, 136 S. E. page 186.

In view of the foregoing this court will enter a decree perpetually enjoining and restraining the School Board of Dickenson county from using any of the funds arising from the sale of bonds under the act of March 18, 1926, allotted thereunder to Sand Lick district, for the purpose of erecting a joint schoolhouse in Willis district for the joint use of Willis and Sand Lick districts.  In other respects there is no error in the decree of the circuit court.

*Reversed.*