**Cecil R. WIGGINS, Plaintiff,**

v.

**PROCTOR & SCHWARTZ, INC.,**
**Defendant.**

**Civ. A. No. 872–70–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.
Aug. 31, 1971.

Morris H. Fine, Norfolk, Va., for plaintiff.

E. Leslie Cox, Norfolk, Va., for defendant.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

Interesting questions involving the statute of limitations are presented by the defendant's motion for summary judgment.

The facts are not in dispute. On October 8, 1954, the plaintiff's employer, Dixie Jute Manufacturing Company, formerly Dixie Jute Bagging Corporation, ordered a No. 616 Super Jute Picker, weighing 4,500 pounds, 48 inches in width with a 24-bar cylinder and five-foot long metallic feed apron, from the defendant. The machinery was shipped by truck from defendant's plant on November 3, 1954, arriving on the next day, and immediately thereafter was installed as an essential component of Dixie Jute's manufacturing process at Norfolk by affixing it to a heavy concrete foundation in the Dixie Jute factory by means of heavy hold-down bolts.[1]

Plaintiff, alleging that he was an employee of Dixie Jute on December 31, 1968—more than 14 years after the machinery had been installed as a fixture in the factory at Norfolk—was injured allegedly by reason of the "negligent and unsafe manufacture and unsafe and negligent design" of the machinery manufactured by defendant. Negligence and breach of implied warranty are claimed.

Defendant acknowledges the vitality of Caudill v. Wise Rambler, Inc., 210 Va. 11, 168 S.E.2d 257 (1969), following Sides v. Richard Machine Works, Inc., 406 F.2d 445 (4 Cir., 1969), and Barnes

---

1. Plaintiff's counsel tacitly concedes these facts by letter of May 11, 1971, and has not responded to affidavit filed in support of motion for summary judgment.

v. Sears, Roebuck & Co., 406 F.2d 859 (4 Cir., 1969). The question in these cases dealt with when plaintiff's right of action "accrued" under section 8–24, Code of Virginia 1950, as amended. It is also conceded that the statute of limitations applicable to an action for breach of warranty is the same as a negligence action for personal injuries. Friedman v. Peoples Service Drug Stores, Inc., 208 Va. 700, 160 S.E.2d 563 (1968).

In the present case we have for consideration the limiting period under section 8–24.2 adopted in 1964, and not section 8–24. The pertinent portions of section 8–24.2 read as follows:

> "No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property more than five years after the performance of furnishing of such services and construction. This limitation shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

There is no contention that the defendant ever had possession or control of the machinery or the premises at Dixie Jute after the machinery left the defendant's plant in 1954. Thus, the exception set forth in the last sentence of section 8–24.2 is not applicable except to point out that the plaintiff, if legally permitted to do so, could sue Dixie Jute.

It is well settled that the use of the word "person" in any Virginia statute includes the defendant as a corporation. Section 1–13.19, Code of Virginia 1950, as amended; Stribling v. Bank of the Valley, 5 Rand. (26 Va.) 132, 190 (1827); Miller's Ex'r v. Commonwealth, 68 Va. (27 Gratt.) 110 (1876). See also: section 1–13, Code of Virginia 1950, as amended, dealing with Virginia Rules of Statutory Construction. Thus it follows that the defendant is a "person" under Section 8–24.2.

Significantly, it should be noted that section 8–24 provides that an action "shall be brought within two years next *after the right to bring the same shall have accrued*," whereas section 8–24.2 contains no such language and specifically states that the limitation period of five years shall begin *"after the performance or furnishing of such services and construction."* It was the fact that a right of action did not "accrue" until the injury which prompted the decisions in *Caudill*, *Sides* and *Barnes*.

We next turn to the question as to whether the machinery, bolted as it was to the floor of a factory engaged in manufacturing bags, constitutes "an improvement to real property" as used in section 8–24.2. Additions and other changes in the structure of a building which are calculated to add to its useable value are "improvements." Effinger's Ex'x v. Kenny, 92 Va. 245, 23 S.E. 742, 744 (1895). Machinery placed upon the realty as a permanent accession in order to carry on the business for which the realty is used becomes a fixture and part of the realty on being installed. City of Newport News v. Warwick County, 159 Va. 571, 166 S.E. 570, 581 (1932). To the same effect are Carolina Cotton & Woolen Mills Co. v. Commonwealth, 138 Va. 71, 121 S.E. 65 (1924), and Green v. Phillips, 26 Gratt. (67 Va.) 752 (1875). Perhaps the most apt statement is from Danville Holding Corp. v. Clement, 178 Va. 223, 16 S.E.2d 345, 349–50 (1941), where it is said:

> "The true rule deduced from all the authorities seems to be this: That where the machinery is permanent in its character, and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building; and that whatever is essential to the pur-

pose for which the building is used will be considered as a fixture, although the connection between them is such that it may be severed without physical or lasting injury to either."

While the supporting affidavit merely states that the particular machinery producing the injury to plaintiff was installed as an essential component to the manufacturing process, counsel for plaintiff was, at the argument on the motion, invited to visit the premises to determine the nature and character of Dixie's plant and the manner in which the machine was affixed to the floor. We think it clear that the machinery became a part of the realty.

A more serious problem is whether a manufacturer, such as the defendant, may be regarded as having performed or furnished "the design, planning, surveying, supervision of construction or construction of such improvement to real property." By operation of law the large machine became a legal "improvement" for the purposes for which it was used by Dixie Jute. While we have nothing in the record indicating that defendant designed, planned, supervised the construction of or constructed said machine, this is precisely what the plaintiff alleges. The statute should be given a reasonably liberal interpretation. If it is to operate for the benefit of the contractor who erected the building, it should also operate in like manner for the benefit of any manufacturer who constructs an integral part of said building. Persons who construct a factory may be called upon, as a part of the contract, to provide many items which are included as permanent fixtures in the original building. The same logic exists when a permanent fixture is added as an improvement. While there may be a material distinction between a manufacturer and a contractor for tax purposes, a manufacturer of a given product is assuredly one who designs, plans, supervises and constructs the improvement which is considered as such the moment it is affixed to the realty. In the sense that section 8–24.2 uses the terms, the

words "construct" and "manufacture" are synonyms. Webster's New World Dictionary of the English Language, College Ed., 1968, p. 886; Roget's Thesaurus of the English Language in Dictionary Form, Rev.Ed.1936, pp. 298, 385. But we do not rest this conclusion on mere definitions. The complaint alleges that the defendant designed the machine. It was the machine which became the improvement to real property. A machine, such as the one involved herein, by its very use had to be permanently affixed to real property as a usable improvement. The same would apply to a furnace, an air conditioning system, etc. A five-year statute is reasonable under all the circumstances, and is substantially longer than the two-year statute of limitations as provided by section 8–24.

Plaintiff argues, however, that the legislative purpose of section 8–24.2 was to protect architects, designers, engineers, or contractors of buildings—and not fixtures placed in buildings. There is no legislative history available as far as Virginia is concerned. It is probably true that architects and engineers prompted the passage of section 8–24.2, but the statutes throughout the country are not uniform in this regard. In the recent case involving the unfortunate death of the famous astronaut, Virgil I. Grissom, the Florida statute limiting actions against professional engineers was invoked by Grissom's widow in an effort to circumvent the two-year statute of limitations in wrongful death actions, but the district judge interpreted the statute as limiting the action to that against *professional engineers* and, since the action was maintained against North American Aviation, Inc. which manufactured the Apollo space capsule, the two-year period was applicable. Grissom v. North American Aviation, Inc., 326 F. Supp. 465, M.D.Fla., Orlando Division, decided May 11, 1971.

Like Virginia, Florida had no legislative history as to its statute. The *Grissom* opinion does make reference to H.R. 4181, 91st Congress, 1st Sess. (1969),

seeking to amend the statute of limitations for actions relating to defective improvements to realty in the District of Columbia. The bill passed the House but died in the Senate. The legislative history markedly points to the necessity for such legislation. It refers to "engineers who design and install equipment, or contractors who build the improvements," finding themselves as defendant in damage suits many years after the improvement is completed and occupied. It points out that modern architecture, engineering, and construction, with the new techniques, technology, and methods, may give the appearance of defective or unsafe conditions as to old improvements which may be used as a basis for damage suits. It referred to several instances in which particular elements became a part of the realty and, many years thereafter, architects, engineers and contractors were subjected to suit. It suggested that architects, engineers and contractors are powerless to prevent an owner from making alterations or changes.

Manifestly, the only safe rule would be to encompass machinery, such as here involved, as a part of the realty. Both the law and common sense requires it. The Virginia statute, section 8–24.2, does not limit the matter to persons relating to the original construction of the building. It refers to "improvements to real property" without regard to when the improvements were made. There is no logical reason why fixtures, permanently affixed to an existing building, should not fall within the statute, even though, as stated in Danville Holding Corp. v. Clement, *supra*, the fixture may be severed without physical or lasting injury to the fixture (machinery) or building.

We must, therefore, conclude that section 8–24.2 covers the manufacturer of a machine which is permanently affixed to an existing building and the defendant's motion for summary judgment must be sustained. It is so ordered.

The other issues raised by the defendant are now moot and will not be considered.