**James Edmond SMITH, Plaintiff,**

v.

**ALLEN–BRADLEY COMPANY**

and

**T. W. and C. B. Sheridan Company,
Defendants.**

Civ. A. No. 72–C–42–L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

Jan. 23, 1974.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., and Lacey E. Putney, Putney & Putney, Bedford, Va., for plaintiff.

William R. Rakes, Gentry, Locke, Rakes & Moore, Ronaoke, Va., for Allen-Bradley Co.

S. J. Thompson, Jr., Caskie, Frost, Davidson, Hobbs & Hamblem, Lynchburg, Va., for T. W. and C. B. Sheridan Co.

## OPINION

TURK, Chief Judge.

This diversity case is before the court on defendants' motion to dismiss, and the issue presented at this time is whether plaintiff's cause of action is barred by the statute of limitations.

Plaintiff alleges in his complaint that on or about May 28, 1970, while engaged in the course of his employment for Rubatex Corporation, a "limit switch" malfunctioned causing a Sheridan #34 Die Cutting Press to operate in a faulty manner with the proximate result that both of his hands were crushed to such an extent that they had to be amputated. The "limit switch" had been manufactured by defendant, Allen-Bradley Company, and sold to plaintiff's employer in connection with the Sheridan #34 Die Cutting Press, which in turn had been sold to plaintiff's employer by defendant, T. W. and C. B. Sheridan Company.[1] Plaintiff alleges that the defendants are jointly and severally liable for his injuries on theories of implied and express warranty; negligence in design, manufacture and assembly; and strict liability in tort. The defendants contend that since the machinery in question was installed in the Rubatex plant in early 1953, plaintiff's cause of action is time barred by § 8–24.2 of the Code of Virginia, as amended, (Supp.1973).

In pertinent part § 8–24.2 of the Code of Virginia now provides:

"No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.

[This limitation shall not apply to the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become a part of any real property either as improvements or otherwise.]"

The second paragraph of the above statute, enclosed in brackets, became effective on March 13, 1973 and is thus not

---

1. According to the motion to dismiss filed by the Harris-Intertype Corporation, the T. W. and C. B. Sheridan Company which manufactured the machine in question was dissolved in 1964, and certain of its assets were purchased and certain of its liabilities were assumed by a new corporation which was also called the T. W. and C. B. Sheridan Company. This "new" Sheridan Company was a wholly-owned subsidiary of the Harris-Intertype Corporation and in 1968 was merged into the Harris-Intertype Corporation. At this point, the court is not prepared to rule on the motion filed by the Harris-Intertype Corporation to dismiss the suit against it on the ground that it has not been properly made a party to the proceeding.

applicable to plaintiff's cause of action, although as is readily apparent, this amendment would preclude defendants' reliance of § 8–24.2 in a case such as the one at bar arising after March 13, 1973.

Plaintiff contends that the above statute, even prior to the enactment of the 1973 amendment, was not meant to apply to manufacturers of chattels which became improvements to realty. Rather, plaintiff argues, the statute was enacted in 1964 at the behest of architects, designers, engineers, and building contractors who feared that their potential liability would be extended significantly by the enactment of laws which removed the protection of privity of contract.[2] Plaintiff concedes that the machine which caused his injury was a fixture, and all fixtures are improvements, but he argues that since this improvement was not of the type which resulted from the performance of the services of architects, contractors or construction engineers, the injury resulting from it was never intended to come within the ambit of § 8–24.2. Plaintiff further argues that because the word "improvement" both precedes and follows the words "design", "planning", "surveying", "supervision of construction", and "construction" in the statute, its meaning is limited to improvements which can be architecturally designed, surveyed or constructed and not manufactured chattels which are added at a later time.

■ ■ The court finds itself persuaded that manufacturers of chattels were never intended to be included within the protection of § 8–24.2 and would be inclined to deny defendants' motions were it not for one insuperable obstacle.

That obstacle is the case of Wiggins v. Proctor & Schwartz, Inc., 330 F.Supp. 350 (E.D.Va.1971), aff'd, Civil No. 71–1952, (4th Cir., March 8, 1972) (per curiam). In *Wiggins* the District Court held that a 4500 pound Super Jute Picker affixed to a heavy concrete foundation on the premises of plaintiff's employer was an improvement to the realty, and its defendant manufacturer was included within the terms of § 8–24.2. Interpreting the words of the statute, the court reasoned that "a manufacturer of a given product is assuredly one who designs, plans, supervises and constructs the improvement which is considered as such the moment it is affixed to the realty." 330 F.Supp. at 353. The court in *Wiggins* stated that architects and engineers probably prompted the passage of § 8–24.2 but could find no logical reason for not including permanent fixtures to an existing building within the meaning of the terms of the statute.

The case at bar presents no factual basis for a meaningful distinction of *Wiggins*. Referring to the depositions of the Plant Manager and an electrician at the Rubatex Plant where the accident occurred, the court notes that the Sheridan Die Cutting Press weighed an estimated 8000 to 10,000 pounds and was affixed to the concrete floor in the plant by heavy bolts. The "limit switch" which allegedly malfunctioned was designed for the machine and made a part of it. Plaintiff has made a point of the fact that the machine in question has been moved on four occasions since its installation in early 1953, but in the opinion of the court this fact does not provide a meaningful basis for distinguishing *Wiggins*.[3] The machine in the

---

2. In 1962 the Virginia legislature enacted § 8–654.3 (now § 8.2–318) which abolished lack of privity as a defense in an action for damages arising from the sale of goods. Plaintiff contends that the 1964 enactment of § 8–24.2 was a "reflex action" prompted by engineers, architects, and building contractors who foresaw the impending demise of their own defense of lack of privity which occurred two years later in 1966 with the enactment of § 8–654.4.

3. A similar argument was apparently made to the District Court in *Wiggins* for that court stated:

"There is no logical reason why fixtures, permanently affixed to an existing building, should not fall within the statute, even though . . . the fixture may be severed without physical or lasting injury to the fixture (machinery) or building." 330 F. Supp. at 354.

case at bar was considerably larger than that in *Wiggins* and thus in a sense even more of an improvement to the realty.

Although the issue presented in the case at bar is indistinguishable from that in *Wiggins*, this court would respectfully decline to follow the legal conclusion based on an interpretation of § 8–24.2 reached in that case were it not for the fact that the decision was affirmed, albeit without discussion, by the Court of Appeals. As has been noted, the 1973 amendment to § 8–24.2 now specifically excludes manufacturers of machinery from the statute's coverage, and it is possible and even probable that this amendment was for the purpose of correcting the interpretation of the statute in *Wiggins*.[4] Nevertheless, this court has no discretion to ignore a decision by the Court of Appeals and must decline the invitation to deviate from the interpretation of § 8–24.2 reached in *Wiggins*. Any arguments for reconsideration of the decision in *Wiggins* are for the Court of Appeals. Accordingly, this court concludes that plaintiff's cause of action is barred by virtue of the limitation contained in § 8–24.2.

 Plaintiff also contends that if § 8–24.2 is applied in the instant case to bar his suit, then it is in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States as well as Sections 1 and 11 of Article I of the Constitution of Virginia. Plaintiff's argument is that the application of § 8–24.2 in this case bars a cause of action before it has accrued and as such prevents any hearing for redress of an alleged wrong committed by a private party. The answer to this is simply that the legislature, in its infinite wisdom may, within limits of rationality, determine what are actionable wrongs and the time limits

within which lawsuits must be brought to redress such wrongs. The legislative determination that there should be a five-year cutoff for actions to recover damages arising out of defective improvements to real property is clearly rational particularly in light of the abolition of lack of privity as a defense to such actions.

Since the court has considered the depositions of two of the employees at the Rubatex Corporation, the defendants' motions to dismiss will be treated as motions for summary judgment, and for the reasons and authority stated summary judgment will be granted for the Allen-Bradley Company and the Harris-Intertype Corporation.

4. In support of his position plaintiff has tendered a copy of a Report of the House of Delegates Committee for Courts of Justice, dated February 5, 1973, which states that "Wiggins v. Proctor & Schwartz, Inc., 330 F.Supp. 350 (E.D.Va.1971), constitutes an erroneous interpretation of section 8–24.2". This report, which is signed by sixteen members of the committee, also states that § 8–24.2 "was never intended to cover or apply to manufacturers or suppliers of any equipment, machinery or articles whether or not they become an improvement to real property."