### Richmond

B. CALVIN BURNS, ET AL., ETC.

V.

BOARD OF SUPERVISORS OF STAFFORD COUNTY

Record No. 810650.

April 27, 1984.

Present: All the Justices.

*Richard R. Nageotte (Nageotte, Borinsky & Zelnick*, on brief), for appellants.
*William H. Harris (Harris & Harris*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal focuses primarily upon the question whether a statute of limitations applies to the governing body of a sanitary district. In response to a motion for judgment, the Stafford County Board of Supervisors counterclaimed on behalf of Aquia Sanitary District to recover money allegedly owed for water and sewer services, and for certain connection fees. According to the Board, from October 20, 1969 through December 31, 1972, Staffordboro Enterprises, a partnership composed of B. Calvin Burns and Ethel Johnson, paid only a portion of the money it owed for water and sewer services. In addition, the Board claimed that Staffordboro owed connection fees which had never been paid. The case was tried to a jury on the basis of the Board's counterclaim.[1] The jury returned a verdict in favor of the Board in the amount of $100,500.00 with interest thereon at 6% from October 20, 1969, to December 31, 1977.

---

[1] The trial court dismissed Staffordboro's Motion for Judgment.

The counterclaim, which had been filed on November 15, 1977, alleged breach of contract. However, Staffordboro contended that the bulk of the claim was barred by a five-year statute of limitations. According to Staffordboro, since the Board sought damages for the time period from October 20, 1969, through December 31, 1972, and since the Board's counterclaim was filed November 15, 1977, then all monies, except those owed from November 15, 1972, through December 31, 1972, were unrecoverable.

█ The board contended, on the strength of Code § 8-35,[2] that its claim was not barred by the statute of limitations. That provision reads as follows:

No statute of limitations which shall not in express terms apply to the Commonwealth shall be deemed a bar to any proceeding by or on behalf of the same. This section shall not, however, apply to agencies of the State incorporated for charitable or educational purposes.

This provision is a codification of the ancient maxim, *nullum tempus occurit regi*, that is, "time does not run against the king." But the statute goes further than the ancient rule. Had the provision concluded with the first sentence, its meaning would have been clear for, by its terms, only the Commonwealth itself would be exempt from the bar of a statute of limitations, unless otherwise expressly stated. The second sentence is the source of additional meaning and is thus central to this appeal.

The second sentence excludes two types of state agencies from the saving grace of the provision: state agencies incorporated for charitable purposes and state agencies incorporated for educational purposes. Because the legislature specifically excluded these two categories of state agencies, it appears that it intended to include other state agencies. The question here is whether the Board, in its capacity as governing body of the sanitary district,[3] is one of the agencies which the legislature intended to protect.

█ The precise issue raised in this appeal has not heretofore been decided by this Court. However, in *Johnson v. Black*, 103 Va. 477, 49 S.E. 633 (1905), we held that the applicable statute

---

[2] Present Code § 8.01-231.

[3] The sanitary district does not have the power to sue or be sued. That power belongs to the governing body of the sanitary district which is the same as the County Board of Supervisors. Code § 15.1-506.

of limitations ran against a county. *Johnson* involved a suit by certain taxpayers of Norfolk County against the Norfolk County Board of Supervisors and others to compel the restoration to the county treasury of certain public monies which, according to the taxpayers, had been illegally and fraudulently withdrawn. The taxpayers contended that the members of the Board of Supervisors had paid themselves more than they were authorized by law to pay themselves. The trial court ruled that plaintiffs stated a cause of action, but held that the defense of the statute of limitations was good as to any defendant who had not drawn such illegal compensation within three years of the date of the institution of the suit. On appeal, we affirmed. We concluded that though the suit was brought in the name of certain taxpayers, it had to be treated as a suit brought by the county. But even though we analyzed the case as if it were one brought by the county itself we held that the applicable statute of limitations barred recovery. We wrote as follows in that regard:

> This is a civil proceeding for the recovery of certain sums of money claimed to be due by the appellants to the county of Norfolk, and the county is practically the complainant. The appellants are only constructive or implied trustees, and in such cases it seems to be well settled that the bar of the statute applies.
>
> The right expressed in the maxim "nullum tempus occurit regi" is an attribute of sovereignty and *cannot be invoked by counties or other subdivisions of the State. As to such subdivisions of the state the statute runs in the same manner and to the same extent as against natural persons.*

103 Va. at 492, 49 S.E. at 638 (emphasis added). The rationale of *Johnson* is that a county is not one and the same as the sovereign with regard to the applicability of statutes of limitations. The import of *Johnson* is that the immunity of governmental bodies from the statutes of limitations is strictly limited.

Substantial policy reasons argue in favor of the view this Court espoused in *Johnson*. Professor William D. Ferguson in his book, *The Statutes of Limitation Saving Statutes* (1978), writes that such statutes are of ancient origin and date back to England in 1623. He identifies the three purposes usually advanced as reasons for such statutes: protection of the public, protection of the plain-

tiff, and protection of the defendant. He concludes that the primary purpose of the statute was to protect defendants. In this regard he writes as follows:

> The defendant, unlike the plaintiff, had no control over the bringing of the action and thus no chance to avoid the risk of the death of witnesses or the loss of evidence.
>
> . . . .
>
> As a matter of fairness to the defendant, he ought to receive notice that a claim was being made against him to enable him to do what he could to guard against loss of evidence. It would be more difficult to do justice between plaintiff and defendant where plaintiff could conserve his evidence and wait until the defendant's evidence was lost.
>
> Based upon this analysis, *it logically appears that the primary purpose of the statutes was to protect defendant against loss of witnesses and evidence and to protect his acts in reasonable reliance on plaintiff's inaction.* The public interest was furthered by the protection of the defendant's interest and should not be permitted to override those interests. The interest in fair and equal justice could be served only by assuring defendants that suit would be commenced before witnesses and evidence were lost.

W. Ferguson, *The Statutes of Limitation Saving Statutes* (1978) at 42-43 (emphasis added). In short, statutes of limitation serve an important and salutary purpose. Without them, defendants could find themselves at the mercy of unscrupulous plaintiffs who hoard evidence that supports their position while waiting for their prospective opponents to discard evidence that would help make a defense. In light of the policy that surrounds statutes of limitation, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case. Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations.

In our opinion, *Johnson* disposes of the statute of limitations issue in this appeal. If a county is not entitled to ignore a statute of limitations, an entity created by that county can have no greater authority to do so. In order to rule in favor of the Board on this issue we would have to overrule *Johnson*. This we are unwilling to do.

Our general reluctance to overrule longstanding precedents is fortified in this case by the fact that we have not been asked to overrule *Johnson*. The Board neither distinguished *Johnson* nor explained why it should not be treated as law. It simply argued that *Johnson* is a "maverick case" and that it predates Code § 8-35 and its predecessor provision, (Code 1919, § 5829). In making this assertion, the Board failed to cite a single case in which this Court has held a county or other governmental entity exempt from the operation of a statute of limitations.

*Johnson* is not a maverick case. The fact that it is the only Virginia case concerning the application of statutes of limitation to a county does not make it a maverick. It is faithful to the policy judgment that statutes of limitation serve the public good. Consequently, it quite reasonably seeks to restrict rather than expand the number of entities authorized to bring suit on the basis of stale claims.

Nor can *Johnson* be disregarded because it predates Code § 8-35 and its predecessor. In making this argument the Board has things turned the "wrong way 'round." Contrary to the Board's argument, the fact that *Johnson* predates the code provision does not weaken *Johnson*; it strengthens it. This is so because where the General Assembly acts in an area in which this Court has already spoken, it is presumed to know the law as the Court has stated it and to acquiesce therein. *See Jones Construction Co.* v. *Martin*, 198 Va. 370, 94 S.E.2d 202 (1956); *Seymour and Burford Corp.* v. *Richardson*, 194 Va. 709, 75 S.E.2d 77 (1953); *McFadden* v. *McNorton*, 193 Va. 455, 69 S.E.2d 445 (1952); *Powers* v. *County School Board*, 148 Va. 661, 139 S.E. 262 (1927). It follows therefore, that where the General Assembly intends to countermand a decision of this Court it must do so explicitly. In this case, the legislature had the benefit of *Johnson* when it drafted the predecessor to the statute here under consideration and could have, in effect, "overruled" *Johnson* by including the word "county" in the statute had it so chosen. The failure to do so, in our opinion, reinforces the rule in *Johnson*. We hold, therefore, that the Board, in its capacity as the governing body of the sanitary district, is not entitled to the benefit of Code § 8-35.

The Board also argues that even if it does not have the benefit of the statutory provision, its claim was nonetheless timely because the statute of limitations that applies to its claim in the instant appeal was tolled by a cross-claim it filed in a separate

proceeding between the same parties. In essence, the Board attempts to save its claim in the present suit by pointing to something it did in a previous suit. The Board cites no authority in support of this novel proposition, and we reject it.

■ The Board also argues that its claim should not be time-barred because it could have asserted a lien against Staffordboro for the amounts allegedly owed and then had ten years in which to enforce that lien. This argument is without merit because, as counsel admitted in oral argument, the Board's suit was not based on a lien.

Though our ruling on the statute of limitations disposes of much of the case, it leaves unaffected the Board's claim for damages which accrued after the period of limitations. *See* Code § 8.01-233 and its predecessor. Because of this, we must consider the evidentiary issue assigned as error by Staffordboro.

■ Staffordboro complains, on appeal, that the Board's key damage witness testified on the basis of hearsay. The hearsay question arose in the following context: The case came on for trial in June, 1980, but the damages related to events that took place between 1969 and 1972. Instead of introducing into evidence the actual billing records relating to the time period in question, the Board attempted to "reconstruct" the Staffordboro account. The reconstruction was meant to show the amount of water consumed, the rate charged for the water, the sewer usage, the rate charged for sewer services, and the connection fees.

The Board put on its evidence of the reconstructed account through William J. Elliott, a former employee of Stafford County, who was retained by the Board for the purpose of developing the damage testimony for use at trial. He was not, however, used as an expert witness. Elliott testified that he started working for Stafford County in 1975 as an assistant county administrator. In 1976, he was transferred to the Stafford Sanitary District as County Engineer in charge of operations. Elliott said that at the sanitary district he was in charge of administration and billing.

Elliott testified that he had some knowledge of the operation of the sanitary district and explained how bills were generated. He said that water meter readings were taken at the various residences and this information was compiled. Each month the prior reading was subtracted from the latest reading and the difference was the amount of water consumed during the previous month. Elliott said that once the consumption was thus established, the

applicable rates were multiplied against the amount of water used and the charge was thus determined. He said that in preparing for trial he "reviewed the meter readings and regenerated the consumptions and charges associated with Staffordboro." Elliott went on to say that in reconstructing the Staffordboro account he reviewed plaintiffs' exhibits 1, 2, 3, and 4, which consist of water meter records for the time period in dispute.

Elliott was asked to explain what he meant by "reconstruct the account." He replied that "[t]o begin with, you go back to the very basic element of information that is used in creating any kind of a charge and that is the meter reading, itself." He further explained that

> [o]nce these readings are available, then, you need only to go through and generate the consumption between the periods of the readings, usually, on a monthly basis. Once you have the consumption, *there is a rate structure in the operating policy of the sanitary district* that is very simple. It says for so-many gallons, you pay so-many cents per thousand gallons, all after that number, you pay so much else. And, *there are various graduations that are applied to that consumption until you come out with the total bill.*

(Emphasis added.) When Elliott finished this recitation, Staffordboro's counsel objected as follows:

> Excuse me, Your Honor. At this point, I am going to have to object to any reconstruction of accounts on the basis of hearsay. It is one thing to put the meter readings in under the business exception rule, and it is one thing to reconstruct from hearsay evidence, that is, various documents of which we have no ability to cross examine.

This objection lacks specificity. On appeal, it appears that the source of Staffordboro's complaint was that the operating policy, which contained the rates relied upon by Elliott in reconstructing the account, was not in evidence. Yet, this point is not stated clearly in the foregoing objection. Despite the vagueness of Staffordboro's objection the court ruled as follows: "I am going to permit him his reconstruction of the account, but only to the extent that that reconstruction is based on original records, which are in evidence." Upon further questioning from the Board's counsel on

what documents could serve as bases for Elliott's testimony, the court said the following: "Well, you have plaintiff's exhibits one through four, I believe, would be the documents, *so he can give a reconstruction based on those four exhibits.*" (Emphasis added.) Thus, despite the inadequacy of the objection, the court made clear that the reconstruction was limited to the exhibits in evidence.

Immediately following the court's ruling, Elliott was asked whether his reconstruction was based on exhibits 1 through 4, the meter records. Elliott said, "yes." Yet, as his testimony unfolded, it became clear that he had not given the court a complete answer because, though his testimony was based on the meter cards, it was also based on the operating policy. For example, Elliott explained, in the following terms, the method he used to arrive at the charges for which he said Staffordboro was liable: "Based upon that consumption *and the rates from the operating policy,* I, then, did a physical hand-calculation of the charges that would be applied to that consumption." (Emphasis added.) He added, "We have readings that cover this period. It's a simple matter to put them down in this order and to compute out monthly what the charges should be *under the rates that were applicable.*" (Emphasis added.)

■ Significantly, Staffordboro failed to object to either of these statements even though both are based, in part, upon the operating policy that was not in evidence. Staffordboro's silence in this regard amounts to a waiver of its hearsay objection. It was Staffordboro's duty to object in a timely manner. Nor was this failure to object cured by Staffordboro's subsequent objection to a chart that summarized, in written form, Elliott's oral testimony. The rule is stated in *Whitten* v. *McClelland,* 137 Va. 726, 741, 120 S.E. 146, 150 (1923):

It is a well settled and obviously *sound general rule that an objection to evidence cannot be availed of by a party who has,* at some other time during the trial, voluntarily elicited the same evidence, or has *permitted it to be brought out by his adversary without objection.* The rule finds its most frequent application in cases where the party making the objection *afterwards* introduces the same evidence, but it is properly and logically applicable in any case, regardless of the order of introduction, if the party who has brought out the

evidence in question, or who has permitted it to be brought out, can be fairly held responsible for its presence in the case.

(Emphasis added.) In this case, Staffordboro is plainly responsible for the presence in evidence of testimony based on the operating policy. Thus, it was not error for the trial court to permit Elliott to testify regarding the operating policy or to allow into evidence the chart that summarized Elliott's oral testimony.

■ In its final assignment of error, Staffordboro complains that the trial court erred in not granting its motion to strike the Board's case. Considering the issues joined below, Elliott's testimony contained sufficient evidence upon which the jury could reach a verdict. The trial court, then, did not err in denying the motion to strike the evidence.

Because we have no way to apportion the verdict in order to determine how much is attributable to claims arising in the period barred by the statute of limitations, we will reverse the judgment of the trial court and remand the case for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

COCHRAN, J., dissenting.

I cannot agree that the statute of limitations is applicable to the Board of Supervisors of Stafford County functioning as the governing body of The Aquia Sanitary District. In my view, the Sanitary District is nothing more or less than a legal entity established by the county as a convenient means of providing certain services for the benefit of county residents in a specified area. A sanitary district has been characterized as a limited purpose corporation. *Marsh* v. *Gainesville-Haymarket*, 214 Va. 83, 86, 197 S.E.2d 329, 331 (1973).

A county is an agency of the State, *Board of Supervisors* v. *Cox*, 155 Va. 687, 710, 156 S.E. 755, 762 (1931), and it is entitled to the same immunity from tort liability as the State. *Mann* v. *County Board*, 199 Va. 169, 174, 98 S.E.2d 515, 518 (1957); *Fry* v. *County of Albemarle*, 86 Va. 195, 197-200, 9 S.E. 1004, 1005-06 (1889). By contrast, a city, established as a municipal corporation, is entitled to the same immunity from tort liability as the State only for governmental rather than proprietary functions.

*Burson* v. *Bristol*, 176 Va. 53, 63, 10 S.E.2d 541, 545 (1940). No such distinction between governmental and proprietary functions has been applied to counties. Arguably, cities and counties should be placed on the same footing as to tort liability, but the General Assembly has not seen fit to change by statutory enactment what has been the long-established distinction between the two kinds of political subdivisions. Accordingly, I am constrained to hold that a county sanitary district is an integral part of the county and entitled to the same privileges and immunities enjoyed by the county. By analogy, immunity from tort liability leads to immunity from the bar of the statute of limitations.

Code § 8-35, since recodified as Code § 8.01-231, provided:

> No statute of limitations which shall not in express terms apply to the Commonwealth shall be deemed a bar to any proceeding by or on behalf of the same. This section shall not, however, apply to agencies of the State incorporated for charitable or educational purposes.

The crucial question, therefore, is whether the reference in § 8-35 to "the Commonwealth" includes an agency of the Commonwealth. In my opinion, it does. Otherwise, the second sentence of § 8-35 is meaningless. The exception would be unnecessary if all agencies were excluded under the first sentence.

In *County School Bd.* v. *Whitlow*, 223 Va. 157, 286 S.E.2d 230 (1982), the School Board of Fairfax County relied on the statute in contending that the statute of limitations was inapplicable. We held, however, that the second sentence excluded the School Board from exemption from the bar of limitations because it was incorporated for educational purposes. Implicit in this holding is the rationale that the first sentence would have exempted the School Board, as an agency of the Commonwealth, from the bar of limitations but for the express exception in the second sentence.

*Johnson* v. *Black*, 103 Va. 477, 49 S.E. 633 (1905), upon which the majority rely, stating that counties are subject to statutes of limitation, was decided before the second sentence of § 8-35 was added to the statute.\* Addition of the second sentence demonstrates a clear legislative intent to protect all agencies of the Commonwealth, except those specifically designated, from the running

---

\* The first sentence has been a part of the statute law of the Commonwealth for many years. *See* Code of 1849, p. 225, § 23; Code 1887, § 2937.

of statutes of limitation. The General Assembly could have expressly included counties in the first sentence. In amending the statute after *Johnson*, however, the legislature used more comprehensive terminology by dealing inferentially with all state agencies, including counties. Moreover, the statement in *Johnson* that counties are subject to statutes of limitation was dictum, in that the plaintiffs in that case were private citizens, rather than Norfolk County itself.

In *VEPCO* v. *Hampton Red. Authority*, 217 Va. 30, 225 S.E.2d 364 (1976), we held that a municipal housing authority, created under Code §§ 36-1, *et seq.*, "is an entity purely local in nature and not a state agency performing a function of state government." 217 Va. at 33, 225 S.E.2d at 367. The authority, therefore, was not entitled to the State's immunity from tort liability. "For certain purposes, local political subdivisions, similar to the entity involved here, are treated as municipal corporations." *Id. See Hampton Rds. San. Dist. Comm.* v. *Smith*, 193 Va. 371, 68 S.E.2d 497 (1952). There is no authority, however, for treating a county agency as a municipal corporation.

In the present case, the counterclaim in question was filed by the Board of Supervisors on behalf of the Sanitary District. Thus, the county was inextricably involved in the litigation. Whether the claim be deemed to be a county claim or a claim of a county agency, I consider that the claim was being prosecuted by an agency of the Commonwealth. Accordingly, I would hold that under Code § 8-35, the claim is not barred by the statute of limitations. I would affirm the judgment of the trial court.

CARRICO, C.J., and COMPTON, J., join in dissent.