# CAPE HENRY TOWERS, INC.

## v.

# NATIONAL GYPSUM COMPANY, ET AL.

Record No. 820946

Decided June 14, 1985, at Richmond

Present: All the Justices

*Joseph L. Lyle, Jr. (Pickett, Lyle, Siegel, Drescher & Croshaw*, on briefs), for appellant.

*John F. Newhard, Jr. (James A. Howard, James A. Howard, II; Breeden, Howard & MacMillan*, on briefs), for appellee, National Gypsum Company.

*Alan B. Rashkind (Richard A. Saunders; Furniss, Davis and Rashkind*, on brief), for appellee, Textured Coatings of America, Inc.

No briefs or arguments for appellees, The Loxcreen Company, Inc. or Loxcreen Architectural Products Corporation.

RUSSELL, J., delivered the opinion of the Court.

This appeal requires that we determine whether the five-year statute of limitations provided by Code § 8.01-250 protects parties who furnish ordinary construction materials which are incorporated into an improvement to real property. We conclude that it does.

In 1974 and 1975, a high-rise condominium apartment building called "Cape Henry Towers West" was erected in Virginia Beach. The developer, a partnership, conveyed its interest to Cape Henry Towers, Inc. (Cape Henry), which sold the individual units and ultimately conveyed the common areas to a Condominium Council of Co-Owners. The construction work was certified by the architect as substantially complete at the end of August 1975, and, in mid-November 1975, the appropriate authorities of the City released the project for occupancy.

On June 3, 1980, the Council of Co-Owners and a representative unit owner filed a motion for judgment against Cape Henry as "developer-builder-vendor," claiming $1,000,000 damages resulting from alleged construction defects. One of the principal issues was the allocation of responsibility for extensive water leaks through the exterior walls of the building.

The general contractor for the construction work was McCrory Sumwalt Construction Company, later McCrory Construction Company. McCrory purchased, from an independent building supply company in South Carolina, exterior panels, approximately four by eight feet in size, manufactured by National Gypsum Company and sold under the trade name "Woodrock." These panels were fastened to interior studs by screws and were coated on the outside by spray application of an oil-based polyester resin coating manufactured by Textured Coatings of America, Inc., under the trade name "Tex-Cote." The panels thus coated constituted the exterior skin of the building.

Cape Henry brought National Gypsum into the case as a third-party defendant on June 19, 1981, and brought Textured Coatings in as a third-party defendant on July 28, 1981. Other parties, not before the Court in this appeal, were added at various times as third-party defendants, fourth-party defendants, and cross-defendants. National Gypsum and Textured Coatings filed pleas of the statute of limitations, which, after consideration of evidence, briefs, and argument, the court sustained on the ground that Cape

Henry's claims against these materialmen were barred by the five-year limitation contained in Code § 8.01-250.[1] We granted Cape Henry an appeal.

The original statute was adopted in 1964 as Code § 8-24.2, providing in pertinent part as follows:

No action . . . arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.

In 1968, an amendment added "surveying" after "planning." Acts 1968, c. 103. In 1973, a second paragraph was added:

This limitation shall not apply to the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become a part of any real property either as an improvement or otherwise . . . .

Acts 1973, c. 247. In the recodification of former Title 8 as new Title 8.01, effective October 1, 1977, the pertinent part of the second paragraph was revised to read as follows:

The limitation prescribed in this Section shall not apply to the manufacturer or supplier of any equipment or machinery or other articles installed in a structure upon real property . . . .

The foregoing legislative history is significant. Although we had not yet been called upon to consider whether former § 8-24.2 applied to materialmen, a Federal court was required to do so in 1971. In *Wiggins* v. *Proctor & Schwartz, Inc.,* 330 F. Supp. 350 (E.D. Va. 1971), *affirmed* in an unpublished opinion, 71-1952 (4th Cir. March 8, 1972), an employee of a jute factory sued the

---

[1] National Gypsum, by an assignment of cross-error, objects to the trial court's failure to rule that Cape Henry's claim against it was also barred by the four-year limitation contained in the Uniform Commercial Code, Code § 8.2-725, and by the pre-1977 limitations applicable to injuries to property. The trial court made no final rulings on these arguments, and they were all rendered moot by its final ruling applying Code § 8.01-250. Therefore, they will not be considered on appeal.

manufacturer of a 4500 pound jute-picking machine, installed and bolted to a concrete foundation in the factory 14 years earlier, for personal injuries allegedly caused by negligent manufacture and design of the machine. The court reasoned that the machine became an improvement to the realty as a fixture because it was essential to the purpose for which the building was occupied, and that the five-year limitation protecting the contractor who erects a building necessarily includes within its ambit those who construct the building's integral parts. Because the machine became an "improvement to real property," the party constructing it was entitled to the protection of the five-year limitation. *Wiggins*, as noted above, was affirmed *per curiam*, without opinion, on March 8, 1972.

■ Considerable controversy ensued. A report of the House of Delegates Committee for Courts of Justice, dated February 5, 1973, characterized *Wiggins* as an "erroneous interpretation," stating that the statute "was never intended to apply to manufacturers or suppliers of any equipment, machinery or articles whether or not they become an improvement to real property."[2] In evident response, and for the apparent purpose of changing the rule of *Wiggins*, the General Assembly adopted the 1973 amendment quoted above, specifically excluding from the operation of the statute "the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become a part of any real property . . . ."

■ Two conclusions may be drawn from this legislative activity in 1973: first, that the General Assembly recognized the need for a change in that the statute's original form included manufacturers of machinery later affixed to realty, a result considered undesirable; and second, that contemplating the change thought desirable, amending language was selected which would accomplish the precise end sought. In construing legislation, we are aided by the legislature's evident interpretation of its earlier enactments, *Commonwealth* v. *Dodson*, 176 Va. 281, 311, 11 S.E.2d 120, 134 (1940); we will assume that its amendments to the law are purposeful and not unnecessary or vain, *Williams* v. *Commonwealth*, 190 Va. 280, 293, 56 S.E.2d 537, 543 (1949); we will presume that the legislature acted with full knowledge of the law as it stood bearing on the subject with which it proposed to deal, *Pow-*

---

[2] The report was unpublished. A copy is attached as an appendix to this opinion.

*ers* v. *County School Board*, 148 Va. 661, 669, 139 S.E. 262, 264 (1927); and we will adopt that construction which gives effect to the legislative purpose, *American Airlines* v. *Battle*, 181 Va. 1, 8, 23 S.E.2d 796, 800 (1943). Thus, we conclude that the language of Code § 8-24.2, as originally enacted, was sufficiently broad to include parties who furnished materials incorporated into the construction of improvements to real estate, that the General Assembly, in 1973, determined that it was inadvisable to continue to extend the protection of the statute to manufacturers and suppliers of machinery and equipment, and that the 1973 amendment, in response to *Wiggins*, removed the statutory protection from such parties.

In 1973, when the General Assembly contemplated narrowing the ambit of the statute, it had full opportunity to go further and remove its protection from manufacturers and suppliers of ordinary building materials incorporated into improvements to real property. Although such parties were necessarily included in the original statute, along with manufacturers and suppliers of machinery and equipment, the legislature chose to make no change with respect to them. Accordingly, they remain within the protection of the statute.

This conclusion is strengthened by a subsequent development. In 1974, another Federal court considered the applicability of the statute to materialmen. In *Smith,* v. *Allen-Bradley Company,* 371 F. Supp. 698 (W.D. Va. 1974), the court applied the five-year limitation of former Code § 8-24.2 to the manufacturer and supplier of a die-cutting press. The press weighed over 8000 pounds, was bolted to the floor of a manufacturing plant over 17 years earlier, and allegedly contained a defective "limit switch" which malfunctioned, resulting in personal injuries to the plaintiff. The plaintiff argued that the five-year limitation was adopted in 1964 at the behest of architects, designers, engineers, and building contractors who accurately foresaw that they were about to lose the defense of lack of privity,[3] and would thus be subject to suit decades after the completion of construction.[4] The court in *Smith* agreed with the plaintiff that Code § 8-24.2 was not originally

---

[3] The defense of lack of privity in such cases was in fact abrogated by the enactment of Code § 8-654.4 in 1966.

[4] Foreseeably, a cause of action would accrue when an installation of defective material was made, but a *right* of action would not accrue until a plaintiff sustained injury therefrom. The traditional statutes of limitations would only then begin to run. *See First Va.*

intended to include "manufactured chattels which are added at a later time," but the court regarded itself bound by the Fourth Circuit's affirmance of *Wiggins*. Nevertheless, the court in *Smith* drew a distinction between "improvements which can be architecturally designed, surveyed or constructed," which the plaintiff conceded were within the operation of the five-year statute, and "manufactured chattels" which could later become accessions to the freehold as fixtures. Under that rationale, the manufacturers and suppliers of ordinary building materials would be within the statute. In *Smith*, the 1973 amendment, removing the protection of the statute from manufacturers and suppliers of machinery and equipment, would have dictated the opposite result if applicable, but it became effective too late to apply to that case.

The significance of the *Smith* case is that it was presumably as fully known to the General Assembly when it again considered the statute, during the recodification of 1977, as *Wiggins* had been during consideration of the amendment of 1973. A further opportunity was thus presented to the legislature to remove the protection of the statute from all parties who manufacture or supply building materials, if that had been the legislative will. Nevertheless, no such change was made, although the statute was reenacted as present Code § 8.01-250 in somewhat modified form.

We conclude that the General Assembly intended to perpetuate a distinction between, on one hand, those who furnish ordinary building materials, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors, and, on the other hand, those who furnish machinery or equipment. Unlike ordinary building materials, machinery and equipment are subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions. Materialmen in the latter category have means of protecting themselves which are not available to the former. We construe § 8.01-250 to cover the former category and to exclude the latter.

Numerous decisions have been cited to us from other jurisdictions having similar statutes. There is a marked lack of unanimity

*Bank-Colonial v. Baker*, 225 Va. 72, 82, 301 S.E.2d 8, 13-14 (1983); *Locke v. Johns-Manville Corp.*, 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981).

among them, but none are based upon a legislative history similar to that experienced in Virginia, and they are, therefore, of little assistance.

Finally, Cape Henry points to the words "or any other articles" (in 1977 amended to read "or other articles") as evidence of legislative intent to broaden the exclusionary effect of the second paragraph of the statute. Cape Henry argues that "the concept of 'other articles' . . . if read literally, would be limitless," and that the words must have been employed by the General Assembly in 1973 for the purpose of excluding from the protection of the five-year statute those who furnish any articles whatever, intending to cover fact situations not specifically foreseen by the legislature when it considered the effect of *Wiggins*.

We cannot, however, consider statutory language out of context, which would be the only basis upon which the words in question could be given the "limitless" effect for which Cape Henry contends. We are guided by two familiar and related principles of statutory construction. "Under the rule of *ejusdem generis*, when a particular class of persons or things is enumerated in a statute and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words." *Martin* v. *Commonwealth*, 224 Va. 298, 301, 295 S.E.2d 890, 892 (1982). "Likewise, according to the maxim *noscitur a sociis* . . . when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words." *Id.* at 302, 295 S.E.2d at 893. Accordingly, we conclude that the general words "or any other articles" add no new or further categories to those excluded from the operation of the statute by the specific words of the second paragraph: "the manufacturer or supplier of any equipment or machinery."

Holding that the trial court correctly applied Code § 8.01-250 to National Gypsum and Textured Coatings, we will affirm the judgments.

*Affirmed.*

## APPENDIX

### REPORT OF THE
### HOUSE OF DELEGATES COMMITTEE
### FOR COURTS OF JUSTICE
### ON HB 1476

### FEB. 5, 1973

It is the opinion of this committee that Virginia Code section 8-24.2 was never intended to cover or apply to manufacturers or suppliers of any equipment, machinery or articles whether or not they become an improvement to real property. It is the further opinion of this committee that the decision in *Wiggins v. Proctor and Schwartz*, 330 F. Supp. 350 (E.D.Va. 1971), constitutes an erroneous interpretation of section 8-24.2. It is therefore the decision of this committee that the passage of HB 1476 is necessary to correct the misinterpretation of the said section by the Federal Court in the *Wiggins Case* and to aid and guide other courts in the proper interpretation of this section of the Code in all other cases whether now pending or hereafter instituted.

[Signatures omitted]