Present:  Hassell, C.J., Koontz, Kinser, Goodwyn, Millette, and
Mims, JJ., and Lacy, S.J.

KEVIN JAMERSON

v.  Record No. 091685                   OPINION BY SENIOR JUSTICE
                                            ELIZABETH B. LACY
COLEMAN-ADAMS CONSTRUCTION,              SEPTEMBER 16, 2010
INC., ET AL.

                FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                       James W. Updike, Jr., Judge

     In this appeal, Kevin Jamerson asks us to reverse the

judgment of the trial court dismissing his personal injury

action because it was filed beyond the statutory limitation

period provided by Code § 8.01-250.  We conclude that the steel

platform and pole which collapsed causing the injuries sustained

by Jamerson are not "equipment, machinery or other article"

under Code § 8.01-250 but ordinary building materials.  Because

Code § 8.01-250 provides a five-year period of repose for claims

based on alleged defects in ordinary building materials, we will

affirm the judgment of the trial court.

                               FACTS

     In 1997 the Moneta Volunteer Fire Department sent out a

request for bids for the construction of a new fire station.

Coleman-Adams Construction, Inc. (Coleman-Adams) submitted a

bid, which was accepted.  Construction began in the spring of

1998.  In October, Ricky Tuck, Chief of the Fire Department,

informed Charles Evans, vice-president of Coleman-Adams, that

the fire station needed a quicker means of access from the second floor to the fire truck and equipment bay located on the first floor than the single staircase contained in the original building plans. Evans and Tuck agreed on the placement of a platform and pole on the second floor that would allow firefighters to access the truck and equipment bay from the second floor of the fire station.

Evans sought a price quote or bid for a three foot by five foot grating platform with rails and a three inch diameter pipe with brace plate and brace angles with all steel prime painted from Virginia Steel & Building Specialties (Virginia Steel), the subcontractor providing structural and miscellaneous steel for the fire station project. Tina Fleshman, vice-president of Virginia Steel, responded with a price quote of $820.00, which Evans accepted. The platform and pole were designated as a change order to the contract between Coleman-Adams and Moneta. Moneta accepted and paid for the change order. Virginia Steel prepared detailed shop drawings based on the requirements submitted by Coleman-Adams, constructed the platform and pole, and delivered the platform and pole to Coleman-Adams at the Moneta fire station site. Coleman-Adams installed the pole and platform in late December 1998 or early January 1999.

On November 4, 2006, Kevin Jamerson, a volunteer firefighter with the Moneta Volunteer Fire Department, was

standing on the platform for the slide pole and was injured when the platform collapsed causing him to fall to the concrete floor approximately 20 feet below. Jamerson filed a complaint seeking damages of $10 million from Coleman-Adams and Virginia Steel alleging that their negligence in designing, manufacturing, and inspecting the platform and pole installed in the fire station caused his injuries. Coleman-Adams and Virginia Steel filed pleas in bar asserting that Jamerson's action was barred by the five-year statute of repose contained in Code § 8.01-250. Following an ore tenus hearing, the trial court sustained the pleas in bar and dismissed Jamerson's complaint, ruling that the platform and pole were ordinary building materials subject to the five-year statute of repose. We awarded Jamerson an appeal.

DISCUSSION

Jamerson raises two assignments of error in this appeal.[1] Initially, Jamerson claims that the trial court erred because it applied "its own test" in determining whether the pole and platform were machinery or equipment. Jamerson also asserts that applying the correct analysis established in our prior cases, the pole and platform are equipment for purposes of Code § 8.01-250 and therefore claims based on defects in the pole and platform are not barred by the five-year statute of repose. We disagree.

_____

[1] Jamerson withdrew a third assignment of error.

-3-

The test that Jamerson asserts the trial court created was that, to qualify as equipment, the item in question had to "do something."  However, a review of the record does not support Jamerson's assertion that the trial court created and applied such a definitive test.  The court used that phrase as part of its analysis when considering the function of the pole and platform insofar as they became "an integrated part of the entire construction."  The trial court considered all the cases decided by this Court relating to whether an item was equipment or machinery for purposes of the statute, and how the factors identified in each of those cases applied in this case.  Accordingly, we reject Jamerson's assertion that the trial court created and applied a new test in resolving the issue in this case.

We next turn to Jamerson's argument that application of this Court's prior cases compels the conclusion that the platform and pole qualify as equipment.  We begin with a review of our prior cases.  Prior to 1973, the predecessor to Code § 8.01-250, former Code § 8-24.2, prohibited suits against persons designing, planning, supervising construction or constructing any improvement to real property based on defects or unsafe conditions of such improvement five years after the performing or furnishing of such services or construction.  In 1973, the General Assembly amended the statute by excluding from

the five-year repose period manufacturers or suppliers of equipment or machinery that was installed in or became a part of the real property.  1973 Acts ch. 247.[2]  The General Assembly, however, did not define "equipment or machinery" for purposes of the statute.  Consequently, this Court has been required to develop a body of jurisprudence to determine whether an item installed in a structure or part of real property as an improvement was equipment or machinery for purposes of the statute of repose.

In the first case addressing the 1973 amendment, Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 331 S.E.2d 476 (1985), this Court determined that the 1973 amendment was intended to create a distinction between "those who furnish ordinary building materials, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors, and, on the other hand, those who furnish machinery

_____

[2] This amendment was adopted in response to a federal district court case which concluded that a jute-picking machine installed in a factory constituted an improvement to the realty and therefore an action based on negligent manufacture or design of the machine brought 14 years after the machine was installed was barred by the five-year statute of repose.  Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 599-600, 331 S.E.2d 476, 478-79 (1985)(explaining that the 1973 amendment to former Code § 8-24.2 was adopted in response to and to change the rule of Wiggins v. Proctor & Schwartz, Inc., 330 F. Supp. 350, 354 (E.D. Va. 1971), aff'd via unpublished opinion (4th Cir. March 8, 1972)).

or equipment." Id. at 602, 331 S.E.2d at 480. The former category is entitled to the five-year statute of repose; the latter category is not. Id. Subsequent cases likewise have focused on whether the item or items in question were ordinary building materials or equipment and machinery: Baker v. Poolservice Co., 272 Va. 677, 636 S.E.2d 360 (2006); Cooper Industries, Inc. v. Melendez, 260 Va. 578, 537 S.E.2d 580 (2000); Luebbers v. Fort Wayne Plastics, Inc., 255 Va. 368, 498 S.E.2d 911 (1998); and Grice v. Hungerford Mechanical Corp., 236 Va. 305, 374 S.E.2d 17 (1988).[3] Further, while definitions of equipment or machinery found in other parts of the Code or administratively adopted regulations, see, e.g., Virginia Uniform Statewide Building Code § 202.0 (1996 ed. 1997) (defining "equipment" and "structure"), may be helpful in some circumstances, they, nevertheless, cannot adequately address in every instance the distinction we found the General Assembly made between ordinary building materials and equipment and machinery for purposes of the application of the statute of repose.

As reflected in these cases, we have identified various characteristics of the items in question, which, in a specific

_____

[3] In Baker, we rejected suggestions that we abandon the "ordinary building materials doctrine" finding that the doctrine is not the result of "flagrant error or mistake . . . and [we] consider it part of the settled jurisprudence of the Commonwealth." Id. at 689; 636 S.E.2d at 367.

case, led to the determination that the items were or were not ordinary building materials. Nevertheless, we have not held any single characteristic or set of characteristics as determinative of the issue. Each case has been and must be decided based on its own circumstances.

Here, Jamerson reaches his conclusion that the platform and pole are equipment by taking factors cited in previous cases and applying them to his version of the facts. In considering Jamerson's contentions, we consider the facts in the light most favorable to the party prevailing below but review de novo the ultimate question whether the platform and pole are equipment or machinery within the meaning of Code § 8.01-250. Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

Jamerson, relying on the discussion of warranties attaching to equipment in Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480, contends the pole and platform are equipment because Virginia Steel warranted the pole and platform. However, the "warranty" reflected in the record, was not a written warranty with terms but a policy of Virginia Steel to stand behind its work. Furthermore, this "warranty" was never communicated to Coleman-Adams or Moneta. This is not the kind of "independent manufacturer's warranties" which this Court in Cape Henry Towers considered as a reason why materialmen who provide equipment and

-7-

machinery were excluded from the five-year statute of repose. Id. at 602, 331 S.E.2d at 480.

Similarly, Jamerson asserts that the pole and platform were subject to "close quality control" by Virginia Steel, of the type characteristic of equipment. Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480; Cooper, 260 Va. at 593-95, 537 S.E.2d at 589-90; Luebbers, 255 Va. at 373, 498 S.E.2d at 913. The "close quality control" alleged by Jamerson involved the fact that the person welding the steel had passed a test qualifying him to weld structural metals and that the welds were inspected by Virginia Steel and Coleman-Adams. However, the record shows that the inspection of the pole and platform was a "review," not the type of quality control process associated with equipment and machinery discussed in Cape Henry Towers and its progeny.

Next Jamerson argues that the plans as well as the installation instructions for the pole and platform were provided by Virginia Steel and therefore make the pole and platform equipment. Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480, Cooper, 260 Va. at 595-96, 537 S.E.2d at 590, Luebbers, 255 Va. at 373, 498 S.E.2d at 913. Again, Jamerson's characterization is not supported by the record. The record does show that Virginia Steel prepared the shop drawings for the job but the shop drawings were prepared based on the dimensions provided by Coleman-Adams following Moneta's request for the new

access point and agreement regarding the adaptation of the original plan to accommodate the plan. The "installation instructions" on the shop drawings upon which Jamerson relies consisted only of suggested types of bolts that could be used to install the platform.

Jamerson maintains that the pole and platform were not assembled at the construction site, and thus, were like the switchgear and circuit breakers held to be equipment in Cooper, 260 Va. at 595-96, 537 S.E.2d at 590. However, while the location of the parts assembly was discussed in Cooper, the decision was grounded on the determination that the switchgear and circuit breakers were not "'essential to the existence of the piers'" to which they were attached but comprised the electrical system for submarines docked at the pier. Id. at 595, 537 S.E.2d at 590. Accordingly, they were not ordinary building materials incorporated into the pier structure. Id. In this case, the pole and platform were a means of access essential to and integrated into the Moneta Volunteer Fire Department structure.

Finally, Jamerson argues that the pole and platform were specially designed for the fire department, were not "fungible" or mass-produced, characteristics of the items determined to be ordinary building materials in Baker, 272 Va. at 691, 636 S.E.2d at 368, and Luebbers, 255 Va. at 373, 498 S.E.2d at 913. The

unique nature of an item, however, does not per se preclude the item from characterization as an ordinary building material. Many items in a structure may be of a customized item or design, but still ordinary building materials for purposes of Code § 8.01-250. For example, a non-standard ramp, door, or set of stairs built to certain specifications to allow access to or in a home does not by virtue of that one-of-a-kind nature transform these ordinary building materials into machinery or equipment. In this case, the pole and platform's function, like that of the ramp, door, or stairs, when incorporated into the building structure was to provide access within the building.

In summary, for the reasons stated, we conclude that the trial court did not err in holding that the pole and platform were ordinary building materials incorporated into the structure. Accordingly, we will affirm the judgment of the trial court dismissing Jamerson's complaint as time-barred under Code § 8.01-250.[4]

Affirmed.


JUSTICE MIMS, with whom JUSTICE GOODWYN joins, concurring.

For more than a generation, lawyers and judges have struggled with the meaning of the undefined, judicially-created

_____

[4] Based on this holding we need not address appellees' assignments of cross-error.

-10-

term "ordinary building materials."  Because I believe the time has come to return to first principles, i.e. the plain language of the statute, I concur with the result in this case without joining the majority opinion.

Confusion about the term is apparent from the number of times this Court has grappled with Code § 8.01-250.  Six opinions in 25 years have attempted to illuminate what the Court means by "ordinary building materials."  Yet, since that term does not appear in the statute and evades clear definition, we have created more heat than light.

The unnecessary complexity in our jurisprudence is evident from the argument of counsel in this case and the majority opinion, which strives to provide direction along the confusing path.  Is there a warranty?  If so, is it a written "warranty with terms" or merely a "policy" to stand behind the work?  Is the work subject to "close quality control?"  Has the person performing the work passed a test qualifying him to do so?  Is there an "inspection" of the work or merely a "review?"  Are there "plans" or "installation instructions?"  If so, by whom were they provided?  Are shop drawings sufficient?  Where was the work assembled?  Is the work "essential to the existence" of the structure?  Is it "integrated into" the structure?  Is the work "specially designed and unique" or is it "fungible and

mass-produced?" Is the work from a "customized design?" What is the "function" of the work?

No wonder the majority opinion warns "we have not held any single characteristic or set of characteristics determinative of the issue. Each case has been and must be decided based on its own circumstances." But therein lies the fault – in cases laden with complex facts, an analysis that itself is more complex than the plain language of the statute requires and is overly dependent on circumstances offers scant useful legal guidance.

Before outlining the development of "ordinary building materials" jurisprudence, it is helpful to trace relevant aspects of the legislative history of Code § 8.01-250 to show why the jurisprudence got off track. The original statute, enacted in 1964 as Code § 8-24.2, applied generally to all improvements to real property.[1]

---

[1] It read:

> No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction. This limitation shall not apply to actions against any person in actual

-12-

In 1971, the United States District Court for the Eastern District of Virginia interpreted that statute in Wiggins v. Proctor & Schwartz, Inc., 330 F. Supp. 350 (E.D. Va. 1971), aff'd No. 71-1952 (4th Cir. Mar. 8, 1972) (unpublished). The plaintiff in Wiggins was injured by a 14-year-old machine on his employer's premises that was "an essential component of . . . [the] manufacturing process" and "affix[ed] . . . to a heavy concrete foundation . . . by means of heavy hold-down bolts." Id. at 351. The federal court held that the machine, which was "permanently affixed to an existing building" by the occupant solely for its business use, was an improvement to real property for purposes of the statute. Id. at 353-54.

The Courts of Justice Committee of the House of Delegates sharply disagreed with the Wiggins court and took the highly unusual step of publishing a brief "report" explaining this disagreement:

> It is the opinion of this committee that Virginia Code section 8-24.2 was never intended to cover or apply to manufacturers or suppliers of any equipment, machinery or articles whether or not they become an improvement to real property. It is the further opinion of this committee that the decision in Wiggins v. Proctor and Schwartz, 330

---

> possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

1964 Acts ch. 333.

F. Supp. 350 (E.D. Va. 1971), constitutes an erroneous interpretation of section 8-24.2. It is therefore the decision of this committee that the passage of HB 1476 [enacted as 1973 Acts of Assembly chapter 247] is necessary to correct the misinterpretation of the said section by the Federal Court in the Wiggins Case and to aid and guide other courts in the proper interpretation of this section of the Code in all other cases whether now pending or hereafter instituted.

House of Delegates Committee for Courts of Justice, Committee Report on HB 1476 (Feb. 5, 1973), reprinted in Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 604, 331 S.E.2d 476, 481 (1985).

The 1973 enactment referenced in this report added the following sentence to the statute:

This limitation shall not apply to the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become a part of any real property either as an improvement or otherwise.

1973 Acts ch. 247.[2]

Based upon this legislative and judicial history, it is reasonable to conclude that the underlying statute is general in its application to "improvements to real property" with specific exclusions for "the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become

---

[2] In 1977 the statute was reenacted as Code § 8.01-250 but not substantively changed when Title 8 was recodified as present Title 8.01. 1977 Acts ch. 617.

a part of any real property either as an improvement or otherwise."[3]

In particular, there is nothing in the statutory language or the committee report indicating a legislative intention for courts to deconstruct complex buildings piece-by-piece and judicially label each component as an "ordinary building material" covered by the statute or, by process of elimination, determine that somehow it is extraordinary and therefore not covered. Yet that is the result of our jurisprudence.

Beginning with Cape Henry Towers, Inc. v. National Gypsum Company, 229 Va. 596, 331 S.E.2d 476 (1985), this Court has declined the opportunity to define the narrow and specific terms used by the General Assembly. Rather, this decision is where the judicially-created term "ordinary building materials" first innocuously appeared:

> [T]he General Assembly, in 1973, determined that it was inadvisable to continue to extend the protection of the statute to manufacturers and suppliers of machinery and equipment, and . . . in response to Wiggins, removed the statutory protection from such parties.
>
> In 1973, when the General Assembly contemplated narrowing the ambit of the statute, it had full opportunity to go further and remove

---

[3] This Court has held that the term "or other articles" in Code § 8.01-250 has no independent meaning apart from machinery or equipment. Cape Henry Towers, Inc. v. National Gypsum Company, 229 Va. 596, 603, 331 S.E.2d 476, 481 (1985). There is nothing in the statute or legislative history that lends support to a contrary conclusion.

> its protection from manufacturers and suppliers
> of ordinary building materials incorporated into
> improvements to real property.

Id. at 601, 331 S.E.2d at 479.  The Court then attempted to structure a definition or set of defining factors for this judicially-created term.  Ordinary building materials "are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors." Id. at 602, 331 S.E.2d at 480.  The Court further distinguished ordinary building materials from machinery and equipment by noting that the latter are "subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions."  Id.  Presumably, by negative inference, ordinary building materials are not necessarily subject to such quality control, warranties or instructions.

However, as the foregoing legislative history demonstrates, it was not necessary to start down the "ordinary building materials" path.  The General Assembly had attempted to correct a simple error using simple and unambiguous, though undefined, terms.

Three years after the Cape Henry decision, this Court decided Grice v. Hungerford Mechanical Corp., 236 Va. 305, 374 S.E.2d 17 (1988).  In Grice, two children died from smoke

-16-

inhalation, from a fire allegedly caused by a malfunctioning electric panel box that was installed in their residence more than five years before the action was filed. The Court applied the factors set forth in Cape Henry to find the electric panel box and its component parts were "ordinary building materials" even though arguably within the definition of "equipment" as set forth in the Uniform Statewide Building Code and the National Electric Code. Id. at 307-09, 374 S.E.2d at 17-19. In finding that an electric panel box and its component parts were ordinary building materials and were not equipment, and thus covered by Code § 8.01-250, the opinion relied upon the following reasoning:

> [T]he quality and quantity of the component parts of an electrical panel box and the instructions for assembling, wiring, grounding, and installing the unit during construction of a particular building are determined by the plans and specifications provided by the architect or other design professional and [n]o instructions are received from the manufacturer.

Id. at 309, 374 S.E.2d at 19 (internal quotation marks omitted). This complex formulation, recited as a summary of the facts upon which the parties had agreed in that case, is confusing at best. It stands in stark contrast to the legislature's use of the simple term "equipment" for which a workable definition easily could be formulated.

The Court's next foray down the "ordinary building materials" path was a decade later in Luebbers v. Fort Wayne Plastics, Inc., 255 Va. 368, 498 S.E.2d 911 (1998), in which it found that an in-ground swimming pool was subject to Code § 8.01-250 since it was composed of ordinary building materials and was not machinery or equipment. While few could argue with that holding, the Court again chose not to confine its analysis solely to the legislature's terms – "machinery" or "equipment" – based upon commonly-accepted definitions, and again relied upon the complex and confusing "ordinary building materials" rationale. Id. at 373, 498 S.E.2d at 913.

This Court in Luebbers reasoned that the component parts of the swimming pool were (1) "interchangeable . . . with component materials made by other manufacturers;" (2) were purchased "in bulk" by distributors for use in construction "according to the dimensions and shapes desired by particular customers;" (3) were "merely" warrantied from "defects of workmanship" and "defective welding" though the manufacturer "exercises no oversight over the construction of the pools;" and (4) were subject to "specification guides and installation manuals as general guides" though they "did not address the construction" of specific swimming pools. Consequently, the materials were "fungible components" and "generic" and thus were ordinary

building materials rather than equipment.  Id. at 373, 498
S.E.2d at 913.

In Cooper Industries, Inc. v. Melendez, 260 Va. 578, 537
S.E.2d 580 (2000), electrical components, i.e. switchgear and
circuit breakers, attached to a pier at Norfolk Naval Base
exploded, seriously injuring two workers and killing a third.
The Court painstakingly recited the "ordinary building
materials" jurisprudence but ultimately held that the electrical
components in fact were "equipment" as contemplated by Code
§ 8.01-250.  Id. at 595-96, 537 S.E.2d at 590.

In the most recent case, Baker v. Poolservice Company, 272
Va. 677, 636 S.E.2d 360 (2006), the plaintiff's assertions
foreshadow this concurrence:

> Baker . . . contends the Court's "extra-statutory
> ordinary building materials doctrine" does not
> follow the text of Code § 8.01-250 and has caused
> considerable confusion.  Consequently, Baker
> urges the Court to reconsider the . . . doctrine
> applied in Cape Henry Towers . . . and later
> cases, which Baker asserts has expanded the
> provisions of Code § 8.01-250 to persons not
> expressly covered by the text of the statute.

Id. at 687, 636 S.E.2d at 366 (internal quotations and citation
omitted).  This Court in Baker declined to set aside the
ordinary building materials doctrine based upon the principle of
stare decisis.  Id. at 688-89, 636 S.E.2d at 367.

However, stare decisis does not compel adherence to
precedents whose application reveals the infirmity of the legal

doctrine they enunciate.  See, e.g., Harmon v. Sadjadi, 273 Va. 184, 197, 639 S.E.2d 294, 301 (2007) (quoting Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997)).

The majority tacitly acknowledges this infirmity in its opinion:

> As reflected in [the Cape Henry line of cases], we have identified various characteristics of the items in question, which, in a specific case, led to the determination that these items were or were not ordinary building materials.  Nevertheless, we have not held any single characteristic or set of characteristics as determinative of the issue.  Each case has been and must be decided based on its own circumstances.

The majority opinion effectively concedes that, to paraphrase Justice Potter Stewart's famous quip, the Court cannot define an ordinary building material but "know[s] it when [it] sees it."  Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).  In short, this circumstantial approach to Code § 8.01-250 has proven to be unworkable, as shown by the frequency of these cases and the complexity of the analysis.

"[S]tare decisis is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon 'an arbitrary discretion,'" Patterson v. McLean Credit Union, 491 U.S. 164, 172 (1989) (quoting The Federalist, No. 78, p. 490 (H. Lodge ed. 1888) (A.

-20-

Hamilton)), and "any departure from [it] demands special justification." Arizona v. Rumsey, 467 U.S. 203, 212 (1984). But stare decisis "is not an inexorable command." McDonald v. City of Chicago, 130 S.Ct. 3020, 3063 (2010) (Thomas, J., concurring). Unworkability is a traditional justification for departing from precedent. Montejo v. Louisiana, 556 U.S., ___, ___, 129 S.Ct. 2079, 2088 (2009). "Beyond workability, the relevant factors in deciding whether to adhere to the principle of stare decisis include the antiquity of the precedent, the reliance interests at stake, and of course whether the decision was well-reasoned." Citizens United v. Federal Election Commission, 130 S. Ct. 876, 912 (2010) (quoting Montejo, 556 U.S. at ___, 129 S.Ct. at 2088-89).

While the Cape Henry decision is twenty-five years old, 1985 hardly can be considered antiquity in the Commonwealth of Virginia.[4] Moreover, the reliance interests at stake here are minimal, if not non-existent: the majority concedes that the ordinary building materials doctrine provides no consistent legal criteria for its application. The weight of these factors – unworkability, antiquity and reliance – weigh strongly in favor of setting aside the ordinary building materials doctrine.

---

[4] This Court traces its origin at least to the Supreme Court of Appeals created in 1776. Va. Const. art. XIV (June 29, 1776), reprinted in 1 William Waller Hening, The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature in the Year 1619 50, 54 (1823).

-21-

Thus, a clearer rule for applying Code § 8.01-250 would be more beneficial than tenacious reliance on the status quo.

The reductio ad absurdum of ordinary building materials jurisprudence is found by analyzing the primary product of steel manufacturers and fabricators. Surely structural steel – beams, joists, trusses, etc. – that forms the skeleton of large commercial structures is an ordinary building material and not equipment or machinery. After all, it serves the same function as off-the-shelf lumber or bricks in residential structures. But would it pass the ordinary building materials analysis under our jurisprudence? Surprisingly that is a close call, with only one factor undisputedly in its favor.

Structural steel for most commercial construction is custom-designed and not fungible or mass-produced, is subject to manufacturing and fabricating to exacting tolerances and minute specifications, i.e. close quality control, is subject to multiple inspections, and is subject to manufacturer's and fabricator's warranties.[5] The only factor that unreservedly

_____

[5] See ADF Int'l, Inc. v. Baker Mellon Stuart Constr., Inc., 2000 U.S. Dist. LEXIS 22597 at *7 (M.D. Fla. 2000) (discussing "detail drawings" and fabrication of structural steel down to "the size, shape, dimension, angles, bolt holes and connection of each steel member"); Sterling Millwrights, Inc. v. United States, 26 Cl. Ct. 49, 54 (1992) (same); Quality Auditing Co. v. Commissioner, 114 T.C. 498, 500 (2000) (discussing American Institute of Steel Construction, Inc. Quality Certification Program); Dakota Gasification Co. v. Pascoe Bldg. Sys., 91 F.3d 1094, 1096 (1996) (contractual warranty for structural steel).

would cause structural steel to be characterized as an ordinary building material is the common-sense realization that it is "essential to the existence" of the structure.

But, if the ordinary building materials analysis were to be left behind, what would replace it? Returning to first principles, as with all legislative enactments we must look to the plain language of the statute. We should begin with the clear language of the predecessor to Code § 8.01-250 prior to 1973. The statute of repose applied generally to all improvements to real property. After 1973, this limitation was constrained to exclude machinery and equipment – terms that are not difficult to define or understand. We also benefit from the Courts of Justice Committee's report and by knowing the narrow and specific problem the legislature wanted to solve – the erroneous holding in Wiggins.

Machinery clearly includes the Wiggins scenario: that which is supplied by the user of the building for the processes performed therein and which is not related to the function of the building qua building – manufacturing machinery, printing presses, large computers, and the like. Equipment, though not defined in Code § 8.01-250, is defined for construction purposes generally in the venerable Uniform Statewide Building Code – the bible for the construction industry. Essentially, it is

articles subject to the work performed by the mechanical construction trades: "Plumbing, heating, electrical, ventilating, air-conditioning and refrigeration equipment, elevators, dumbwaiters, escalators and other mechanical additions or installations." Virginia Statewide Building Code § 202.0 (1996 ed. 1997). This Court may borrow the definition of a term from another Code section, particularly when the substantive context of the terms, i.e. construction of buildings, is identical. Where the terms of a section of the Code are ambiguous and the Court looks for guidance in resolving the ambiguity, "we are not confined to the language of that section, but can look to other sections of the Code where the same terms are employed." First Nat'l Bank v. Holland, 99 Va. 495, 504, 39 S.E. 126, 129 (1901).

Ideally the General Assembly would define these terms, as suggested in the legislative report on the 1973 amendment, "to aid and guide . . . courts in the proper interpretation" of Code § 8.01-250. But in the absence of legislative definitions, lawyers and judges would benefit from clarified jurisprudence that relies primarily on the plain language of terms the General Assembly actually used rather than a confusing term created by the judiciary.