PRESENT: Koontz, Kinser, Lemons, Goodwyn, Millette, and Mims, JJ., and Russell, S.J.

ROYAL INDEMNITY COMPANY, AS
SUBROGEE OF FIRST CENTRUM, LLC
AND CENTRUM PRINCE WILLIAM, LP, ET AL.

v. Record No. 091993

TYCO FIRE PRODUCTS, LP

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
JANUARY 13, 2011

ROYAL INDEMNITY COMPANY, AS
SUBROGEE OF FIRST CENTRUM, LLC
AND CENTRUM PRINCE WILLIAM, LP, ET AL.

v. Record No. 092567

SIMPLEXGRINNELL, LP


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Craig D. Johnston, Judge[1]

In this product liability case, we address issues concerning the statute of repose and breach of warranty. We conclude that exterior sidewall sprinkler heads are "equipment" under Code § 8.01-250 and reverse the judgment of the circuit court that the sprinkler heads are ordinary building materials. We also hold that a manufacturer's description of how a sprinkler head functions does not constitute an express warranty of future performance.

---

[1] Judge Rossie D. Alston, Jr. ruled on the defendants' pleas in bar regarding the statute of repose prior to joining the Court of Appeals. Judge Craig D. Johnston ruled on the defendants' pleas in bar regarding the statute of limitations as to the warranty claims.

BACKGROUND

This case arose out of a fire that started on the exterior balcony of an apartment building on February 8, 2003. Two exterior sidewall sprinkler heads installed on two separate balconies where the fire originated failed to activate, which allowed the fire to spread to other parts of the building and adjoining buildings causing substantial damage.

Royal Indemnity Company and American Empire Surplus Lines Insurance Company (together, Royal) filed an amended motion for judgment in the amount of $10,317,083.78 against Tyco Fire Products (Tyco) and SimplexGrinnell, LP (Simplex) alleging that the sprinkler heads, which were manufactured by Tyco and installed by Simplex prior to June 1997, failed to properly activate causing substantial damage to the apartment complex.[2] Royal asserted various negligence-based causes of action against both Tyco and Simplex, including negligent design and manufacture of the sprinkler heads, and post-sale duty to warn. Royal also asserted warranty claims against both defendants, claiming that the defendants breached an alleged warranty of future performance.

The parties' stipulated facts described the sprinkler heads as follows:

_____

[2] Royal, as the property insurer for the apartment complex, paid for the damage caused by the fire and is subrogated to the rights of the apartment complex owner.

The model F960/Q46 sprinkler head is an automatic dry sprinkler of the frangible bulb type. This model contains a sprinkler secured to an extension nipple that has a seal at the inlet end to prevent water from entering the nipple until the sprinkler operates. The seal mechanism at the inlet end is comprised of a brass plug and O-ring. The O-ring is fitted into a machined groove on the brass plug. The plug is attached to a yoke assembly. The yoke assembly sits upon a watertube. A guide tube assembly is fitted into the opposite end of the watertube. The bulb seat sits upon the guide tube assembly and the bulb sits upon the bulb seat and is secured in place by the compression screw. The compression screw is threaded into the frame. The frame is secured into one end of the outer pipe and the inlet is secured into the opposite end of the outer pipe. The inlet is machined with 1" NPT threads for mating the sprinkler head into a fire sprinkler system fitting.

. . . .

Under normal service conditions, the F960/Q46 sprinkler head is intended to operate as follows. When the sprinkler is in service, water is prevented from entering the assembly by the Plug and O-ring seal in the inlet of the sprinkler. The glass bulb contains a fluid that expands when exposed to heat. When the rated temperature is reached, the fluid expands sufficiently to shatter the glass bulb, and the bulb seat is released. The compressed spring is then able to expand and push the water tube as well as the guide tube outward. This action simultaneously pulls outward on the yoke, withdrawing the plug and O-ring seal from the inlet allowing the sprinkler to activate and flow water.

In its complaint, Royal alleged that the sprinkler heads failed to operate properly. Specifically, Royal asserted that "[s]cientific inspection of the pressure tested sprinkler heads . . . determined that corrosion existed at the interface between the brass plug and O-ring assembly and inlet which

3

. . . prevented the inlet plugs from disengaging and operating as intended upon the breaking of the frangible bulbs."

Tyco and Simplex filed pleas in bar asserting that the negligence-based causes of action were barred by the statute of repose, Code § 8.01-250. After an ore tenus hearing and receipt of stipulated evidence, the circuit court granted the defendants' pleas in bar ruling that the sprinkler heads were ordinary building materials under the statute of repose.

The defendants also filed pleas in bar arguing that Royal's warranty claims were barred by the statute of limitations. After a hearing, the circuit court sustained the pleas in bar ruling the warranty claims were barred by the applicable statutes of limitations. We awarded Royal this appeal.

DISCUSSION

Royal assigns error to the circuit court's judgment sustaining the defendants' pleas in bar as to the negligence-based causes of action under the statute of repose, and as to the warranty claims under the applicable statutes of limitations.

A.    Statute of Repose

Royal argues that the circuit court erred in granting the defendants' pleas in bar because it ruled that Royal's negligence-based actions were barred by the five-year statute

4

of repose, Code § 8.01-250.  The statute provides, in pertinent part:

> No action to recover for any injury to property . . . arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.
>
> The limitation prescribed in this section shall not apply to the manufacturer or supplier of any **equipment** or machinery or other articles installed in a structure upon real property . . . .

(Emphasis added).

Royal argues that the circuit court erred in concluding that the sprinkler heads are "ordinary building materials," and therefore covered by the statute of repose.  According to Royal, the sprinkler heads are "equipment" under the terms of the statute.  To support this position, Royal cites various characteristics of the sprinkler heads that this Court has previously stated were indicative of "equipment" under Code § 8.01-250.  Specifically, Royal asserts that the sprinkler heads are finished products, fully assembled by the manufacturer, and individually packaged.  Royal also contends that the sprinkler heads are not essential to the building, but are "an adjunct service to the building to protect it from fire."  Continuing, Royal argues that the sprinkler heads "perform[] a function other than being a part of the

5

construction[,]" which distinguishes them from ordinary building materials.

Focusing on our past decisions outlining the "ordinary building materials doctrine," Royal concludes that our jurisprudence "make[s] it clear that ordinary building materials are generic in nature and are not separate and distinct mechanical operating products." Royal asserts that the sprinkler heads are independent mechanical devices that have a specific function, and thus are clearly distinguishable from the items this Court has held to be ordinary building materials. Finally, Royal contends that the statute of repose was not intended to protect manufacturers, such as Tyco, who have the means to protect themselves by testing, engineering, quality control, and issuing warranties on their products.

We agree with Royal that our prior case law supports the conclusion that the sprinkler heads are equipment under the statute of repose. In addressing whether certain items fall within the protection of the statute of repose, we have

> identified various characteristics of the items in question, which, in a specific case, led to the determination that the items were or were not ordinary building materials. Nevertheless, we have not held any single characteristic or set of characteristics as determinative of the issue. Each case has been and must be decided based on its own circumstances.

Jamerson v. Coleman-Adams Construction, Inc., 280 Va. 490, 496, 699 S.E.2d 197, 199 (2010). In considering this issue, we view

6

the facts in the light most favorable to the party prevailing below, but review de novo the question whether the sprinkler heads are equipment under Code § 8.01-250.  Id. at 496, 699 S.E.2d at 200; Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

We first addressed Code § 8.01-250 in Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 331 S.E.2d 476 (1985).  In interpreting the statute, we stated:

> We conclude that the General Assembly intended to perpetuate a distinction between, on one hand, those who furnish ordinary building materials, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors, and, on the other hand, those who furnish machinery or equipment.  Unlike ordinary building materials, machinery and equipment are subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions. Materialmen in the latter category have means of protecting themselves which are not available to the former.  We construe § 8.01-250 to cover the former category and to exclude the latter.

Id. at 602, 331 S.E.2d at 480.  Applying this distinction between ordinary building materials and machinery and equipment, we held that exterior panels used in the construction of condominium buildings were ordinary building materials.  Id.

Next, in Grice v. Hungerford Mechanical Corp., we applied the same factors and analysis announced in Cape Henry Towers,

7

holding that an electric panel box and its component parts were ordinary building materials. 236 Va. 305, 307-09 374 S.E.2d 17, 17-19 (1988). In reaching this conclusion, we relied, in part, upon the fact that

> the quality and quantity of the component parts of an electrical panel box and the instructions for assembling, wiring, grounding, and installing the unit during construction of a particular building are determined by the plans and specifications provided by the architect or other design professional and [n]o instructions are received from the manufacturer.

Id. at 309, 374 S.E.2d at 19 (internal quotation marks omitted). Thus, we held that an electrical panel box and its component parts – assembled on-site by the electrical subcontractor pursuant to the instructions by the architect or other design professional, and without direction from the manufacturer of the component parts – were ordinary building materials.

Ten years later, we addressed whether steel panels, braces, and vinyl liners used in construction of an in-ground swimming pool were ordinary building materials. Luebbers v. Fort Wayne Plastics, Inc., 255 Va. 368, 498 S.E.2d 911 (1998). In holding that these items were ordinary building materials, we reasoned that the component parts of the swimming pool were: interchangeable with parts made by other manufacturers; purchased in bulk from the manufacturer; and constructed and assembled without direction by the manufacturer. Id. at 373,

8

498 S.E.2d at 913. Additionally, we noted that the manufacturer merely warranted that the materials were free from defects in workmanship and welding, and the installation manuals were merely "general guides." Id. Most importantly, we stated that the "items served no function other than as generic materials to be included in the larger whole and are indistinguishable . . . from the wall panels . . . in Cape Henry Towers." Id.

Next, in Cooper Industries, Inc. v. Melendez, 260 Va. 578, 537 S.E.2d 580 (2000), we concluded that an industrial switchgear and circuit breakers were equipment under the statute of repose. In reaching this decision, we observed that the "switchgear and circuit breakers were each self-contained and fully assembled by their respective manufacturers[,]" and that the circuit breakers had been tested by their manufacturer. Id. at 595, 537 S.E.2d at 590. Our decision was also based on the determination that the industrial switchgear and circuit breakers were not "essential to the existence of the piers" to which they were attached, but comprised the electrical system for submarines docked at the pier. Jamerson, 280 Va. at 497, 699 S.E.2d at 200 (internal quotation marks omitted).

In Baker v. Poolservice Co., 272 Va. 677, 636 S.E.2d 360 (2006), we addressed whether a drain cover installed in an

outdoor spa was an ordinary building material.  In concluding that the drain cover was an ordinary building material and not equipment, we noted that the drain cover was mass-produced, sold primarily to distributors, and once installed, became incorporated into the spa as a fungible component part.  Id. at 690, 636 S.E.2d at 368.

Most recently, in Jamerson, we were presented with the issue whether a steel platform and pole installed in a firehouse was an ordinary building material.  In our analysis, we considered certain characteristics of the steel platform and pole that were utilized in our prior decisions in determining whether an item is an ordinary building material or equipment. Jamerson, 280 Va. at 496-98, 699 S.E.2d at 200-01.  We concluded that the steel platform and pole were ordinary building materials based upon many factors discussed in our previous decisions.  Specifically, we noted that:  there was not an independent manufacturer's warranty; the items were not subject to "close quality control" as discussed in Cape Henry Towers; the installation instructions were merely a guide; the items were a "means of access essential to and integrated into" the firehouse; and, finally, we noted that although the items were unique, this fact "does not per se preclude the item from characterization as an ordinary building material."  Id. at 496-97, 699 S.E.2d at 200-01.

The various factors that were deemed indicative of ordinary building materials or equipment in the decisions discussed above support our decision that the sprinkler heads are equipment under Code § 8.01-250. The sprinkler heads are "fully assembled" by their manufacturer, and are "self-contained" mechanical devices. Cooper, 260 Va. at 595, 537 S.E.2d at 590. Additionally, the sprinkler heads are shipped in individual packages that contain a "technical data sheet," which provides information about the product, including installation instructions. The sprinkler heads are independent mechanical devices that must be installed according to the manufacturer's installation instructions to ensure that they will function properly.

The sprinkler heads are clearly distinguishable from the items at issue in our past decisions that we held were ordinary building materials. Sprinkler heads are not essential structural components of buildings or other structures, as distinguished from the exterior panels in Cape Henry Towers, the component parts of the in-ground pool in Luebbers, and the pool drain cover in Baker. Sprinkler heads are not used by builders, architects, or designers as a functional component in the construction of a building, as was the pole installed in Jamerson, which was incorporated into the firehouse to provide access within the building. 280 Va. at 493, 699 S.E.2d at 198.

11

Rather, sprinkler heads are installed into a building's sprinkler system to serve a purpose unrelated to the construction of the building.  An engineered sprinkler head is a piece of fire protection equipment consisting of a discrete enclosed mechanism containing many parts, with installation instructions to be carried out by a professional installer to perform a specialized job.  The sprinkler heads are not generic building materials from which a building may be constructed, but serve an adjunct function in the building – namely, protection from fire.

As in this case, sprinkler heads are typically installed by a company that specializes in the design and installation of sprinkler systems.  However, even if a builder installs the sprinkler heads, this fact does not transform the sprinkler heads into ordinary building materials, because in our analysis we examine the nature of the product's characteristics.  Id. at 496, 699 S.E.2d at 199.  So viewed, sprinkler heads are clearly the type of items that are "subject to close quality control at the factory and may be subject to independent manufacturer's warranties."  Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480.  In conclusion, our analysis shows that sprinkler heads are specially designed, self-contained mechanical devices that perform a specific function, and thus clearly fall within the meaning of "equipment" under Code § 8.01-250.

12

Because we conclude that sprinkler heads are equipment and not subject to the statute of repose, we must consider whether Simplex is a "manufacturer or supplier" of the sprinkler heads. Code § 8.01-250 exempts from its protection, "manufacturer[s and] supplier[s] of . . . equipment or machinery." Simplex argues that it is neither a manufacturer nor a supplier of the sprinkler heads. Rather, Simplex contends that it is merely an installer of the sprinkler heads, and thus is entitled to the protection of Code § 8.01-250. We agree with Simplex on this issue.

The parties' stipulated facts state that Simplex "did not design, manufacture or assemble any of the sprinkler heads it installed." Thus, Simplex is not a "manufacturer" under the statute of repose. The parties agreed that Simplex "designed the automatic fire sprinkler system . . . and selected the components for the fire sprinkler system." Merely purchasing the sprinkler heads and designing the sprinkler system does not make Simplex a "supplier" under Code § 8.01-250. To deem Simplex a "supplier" merely because it purchased the sprinkler heads would frustrate the purpose of Code § 8.01-250, which is to afford protection to parties who have no other means to shield themselves from potential liability. As we have said, manufacturers and suppliers of equipment and machinery have the ability to protect themselves by using close quality controls

13

and making their products subject to warranties that are voidable if the equipment is not installed or used correctly. Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480. Installers of equipment, such as Simplex, have no means to protect themselves from liability for defective products. Therefore, Simplex is not a "manufacturer or supplier" under Code § 8.01-250.

For the reasons stated, we will reverse the circuit court's judgment sustaining Tyco's plea in bar, and we will affirm the circuit court's judgment sustaining Simplex' plea in bar.[3]

## B. Warranty Claims

The circuit court sustained both Tyco's and Simplex' pleas in bar as to the applicable statutes of limitations. The circuit court sustained Tyco's plea in bar ruling that Royal's breach of warranty cause of action was not filed within the four-year statute of limitations for sale of goods contracts per Code § 8.2-725. The court sustained Simplex' plea in bar ruling that Royal's warranty action was not filed within the

---

[3] Royal also assigned error to the circuit court's ruling dismissing its claims against both defendants for post-sale duty to warn causes of action. However, the circuit court in granting the pleas in bar simply ruled that all of the negligence-based causes of action were barred by the statute of repose. Because Royal failed to present any argument to the circuit court regarding whether Virginia recognizes a post-sale duty to warn and the circuit court did not have an opportunity

14

five-year statute of limitations for written contracts per Code § 8.01-246.  Royal assigns error to the circuit court's ruling on both defendants' pleas in bar.

Regarding Tyco's plea in bar, the circuit court ruled that the breach of warranty claims concerning the sprinkler heads were barred by the four-year statute of limitations per Code § 8.2-725, which applies to contracts for the sale of goods. In making this ruling, the circuit court rejected Royal's contention that the "technical data sheet," which is the accompanying literature to the sprinkler heads, contained an express warranty of future performance.  Royal argues that the circuit court erred in ruling that the "technical data sheet" did not contain an express warranty of future performance.  We disagree with Royal.

Code § 8.2-725(1) provides that a breach of a contract for sale must be commenced within four years after the cause of action accrues.  A cause of action for breach of a contract for the sale of goods accrues when the breach occurs.  Code § 8.2-725(2).  In a contract for the sale of goods, the breach of warranty occurs when

> tender of delivery is made, except that where a
> warranty explicitly extends to future performance of
> the goods and discovery of the breach must await the
> time of such performance the cause of action accrues
> when the breach is or should have been discovered.

to resolve that issue, we will not address this argument on appeal.  Rule 5:25.

15

Code § 8.2-725(2).

It is undisputed that Royal's breach of warranty claim was filed more than four years after delivery of the sprinkler heads.  Thus, the issue is whether there was an express warranty of future performance.  Code § 8.2-313, titled "Express warranties by affirmation, promise, description, sample[,]" provides:

> (1)  Express warranties by the seller are created as follows:
>
>      (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
>      (b)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
>      (c)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2)  It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

16

The "technical data sheet" contains a description of how the sprinkler heads work. The description, which Royal asserts is a warranty of future performance, states:

> When the F960/Q-46 is in service, water is prevented from entering the assembly by the Plug and O-Ring Seal in the Inlet of the Sprinkler. Upon exposure to a temperature sufficient to operate the Bulb, the Bulb shatters and the Bulb Seat is released. The compressed Spring is then able to expand and push the Water Tube as well as the Guide Tube outward. This action simultaneously pulls outward on the Yoke, withdrawing the Plug and O-Ring Seal from the Inlet and initiating water flow.

There is no evidence in the record showing that this language became "part of the basis of the bargain" such that it may be an express warranty of future performance. Indeed, the language amounts to nothing more than a simple description of how the sprinkler heads operate. Nowhere in the description of how the sprinkler heads work does Tyco promise that the sprinkler heads will operate correctly for a particular period of time. Manufacturers of products often provide such information, especially when the products are mechanical devices. To hold that such language amounts to an express warranty of future performance would result in Tyco insuring its sprinkler heads indefinitely. It would be an absurd result to conclude that a description given by a manufacturer as to how a device operates amounts to an express warranty of future performance for an unlimited duration.

17

Additionally, the "technical data sheet" explicitly provided a one-year warranty that the sprinkler head shall be "free from defects in material and workmanship." The warranty language is under the heading "WARRANTY" in the "technical data sheet." If Tyco wished to provide any further warranty, surely it would have put additional language under this section. Considering the explicit one-year warranty contained in the "technical data sheet," the product description cannot be said to constitute an express warranty of future performance for an indefinite period of time. For these reasons, we hold that the circuit court did not err in sustaining Tyco's plea in bar.

Regarding the circuit court's ruling on Simplex' plea in bar, Royal argues that the court erred by dismissing the "warranty cause of action on the grounds that the statements concerning [the sprinkler heads'] future performance under the Virginia Uniform Commercial Code did not constitute a warranty of future performance." We cannot address this assignment of error because Royal alleges that the circuit court erred in making a ruling that it did not make. The circuit court did not sustain Simplex' plea in bar on the ground that there was no warranty of future performance. In fact, the circuit court ruled that the Uniform Commercial Code did not apply to Royal's warranty claim against Simplex because the underlying contract, which was "for the 'design and installation of a fire

18

protection system,'" was not a contract "predominately [for] the sale of goods." Accordingly, we cannot address Royal's argument that the circuit court erred in sustaining Simplex' plea in bar. Rule 5:25.

                        CONCLUSION

In the appeal against Tyco, for the reasons stated, we will reverse in part, affirm in part, and remand this case to the circuit court. On remand, the circuit court shall address Royal's negligence-based causes of action against Tyco.

In the appeal against Simplex, for the reasons stated, we will affirm the judgment of the circuit court.

Record No. 091993 – <u>Affirmed in part, reversed in part, and remanded.</u>

Record No. 092567 – <u>Affirmed.</u>

JUSTICE MIMS, with whom JUSTICE GOODWYN joins, concurring in part.

While I join that part of the Court's opinion addressing Royal's warranty claims, I cannot join that part addressing the statute of repose. Regarding that issue, the majority has reached the correct conclusion that the extension sprinkler heads at issue are "equipment" for purposes of Code § 8.01-250. But because the majority opinion continues to apply the tortured, non-statutory "ordinary building materials" analysis, I merely concur with the result.

19

In my concurrence to Jamerson v. Coleman-Adams Construction, Inc., 280 Va. 490, 699 S.E.2d 197 (2010), I noted that the Court's statute of repose jurisprudence is so confusing that we have been called upon to determine whether an object is an "ordinary building material" six times in 25 years. Id. at 498, 699 S.E.2d at 201. This case marks the seventh time. Since the "ordinary building materials" analysis still is not clear and cannot be made clear, there undoubtedly will be more.