PRESENT: Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Russell, S.J.

BRIAN C. POTTER, PERSONAL
REPRESENTATIVE OF THE
ESTATE OF DANIEL C. POTTER, DECEASED

OPINION BY
v. Record No. 191716                           JUSTICE CLEO E. POWELL
                                                    JULY 22, 2021
BFK, INC.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Brian C. Potter ("Potter"), the father and personal representative of the estate of Daniel

Potter ("Daniel") appeals the decision of the Circuit Court of Loudoun County finding that a

Buell Classifier was ordinary building material and, therefore, subject to Virginia's statute of

repose, Code § 8.01-250.

## I. BACKGROUND

For many years, the Luck Stone Corporation ("Luck Stone") has owned and operated a

stone quarry and surrounding land upon which it operates a surface-mining and processing

operation for the production of stone products. A part of this operation is a system for the

production of manufactured sand from crushed stone. Luck Stone's Chief Concept Engineer

testified that the system is

> comprised of a feed conveyor that carries the raw product
> to . . . the sand system, which is a Buell [C]lassifier the material
> falls into. It's connected by virtue of a ductwork to a silo. The silo
> has a dust collector on top of it, and the whole system is run by a
> fan. A fan creates a draw through the Buell [Classifier] and up into
> the silo. The dust collector shakes, puts the fines into the silo.
> And then . . . the Buell [Classifier] separates the manufactured
> sand from the super fines. The super fines go into the silo; the
> sand goes onto another conveyor.

In 2007, Luck Stone replaced earlier equipment with two Buell Classifiers and other components of the sand manufacturing system with products manufactured by BFK, Inc. ("BFK") and installed by a contractor employed by Luck Stone.

On August 3, 2015, Daniel was employed by Luck Stone as a truck driver. Daniel was instructed to remove material from the sand plant and dump it at an onsite storage area. He parked his truck under the conveyor belt and entered the silo to operate the air flow system. Soon after he entered the silo, a hopper containing stone material ruptured, setting off a chain of events that buried him in falling material and caused his death.

In July 2017, Potter, as the personal representative of Daniel's estate, brought an action under the Virginia Wrongful Death Act, Code § 8.01-50, against BFK and other defendants. BFK filed a plea in bar, asserting that Potter's action was time-barred under the statute of repose, Code § 8.01-250, because the Buell Classifier did not qualify as equipment or machinery and therefore was subject to the five-year limitation imposed by the statute. After holding an evidentiary hearing, the circuit court determined that the Buell Classifier manufactured by BFK "was ordinary building material" and, therefore, the action was time-barred under Code § 8.01-250. Accordingly, the circuit court sustained the plea in bar and dismissed the action against BFK with prejudice.

Potter appeals.

II. ANALYSIS

In the present case, Potter argues that the circuit court erred in sustaining the plea in bar because it incorrectly determined that the Buell Classifier was not equipment or machinery. According to Potter, the circuit court failed to properly weigh the factors established by this

2

Court for determining whether the Buell Classifier was equipment or machinery versus ordinary

building materials. We agree.

Our statute of repose, Code § 8.01-250, states:

> No action to recover for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.
>
> The limitation prescribed in this section shall not apply to the manufacturer or supplier of any equipment or machinery or other articles installed in a structure upon real property, nor to any person in actual possession and in control of the improvement as owner, tenant or otherwise at the time the defective or unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought; rather each such action shall be brought within the time next after such injury occurs as provided in §§ 8.01-243 and 8.01-246.

When interpreting a statute, "this Court seeks to effectuate the intent of the legislature as

expressed by the plain meaning of the words used in the statute." *Llewellyn v. White*, 297 Va.

588, 595 (2019). Although our focus is generally on the plain meaning of unambiguous statutory

language, we must also consider that language in the context in which it is used. *See Eberhardt*

*v. Fairfax County Employees' Ret. Sys. Bd. of Trustees*, 283 Va. 190, 194 (2012) (a term must be

considered in context in order to ascertain its plain meaning).

In analyzing Code § 8.01-250, we have explained that the statute demonstrates the

General Assembly's intent

> to perpetuate a distinction between, on one hand, those who furnish ordinary building materials, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors, and, on the other hand, those who furnish machinery or equipment.

3

*Cape Henry Towers, Inc. v. Nat'l Gypsum Co.*, 229 Va. 596, 602 (1985).

We acknowledge that the phrase "ordinary building materials" is not actually used in Code § 8.01-250. As evident from our prior opinions, however, this phrase is useful shorthand to refer to objects that are neither machinery nor equipment under Code § 8.01-250. Stated differently, the phrase describes objects that have become so attached to a building or land that they are more akin to the structure itself. Such objects are essentially "improvement[s] to real property" and, therefore, fall within the statute of repose and are subject to the five-year limitation that it imposes.

Indeed, it is telling that the determination of whether an object was or was not "ordinary building materials" has always been juxtaposed with a determination of whether an object is machinery or equipment. For example, our decision in *Cape Henry Towers*, 229 Va. at 602, was based entirely on the fact that "[u]nlike ordinary building materials, machinery and equipment are subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions." Similarly, this Court determined that the objects at issue in *Grice v. Hungerford Mech. Corp.*, 236 Va. 305, 309 (1988) (electrical panel and its component parts), *Luebbers v. Fort Wayne Plastics*, 255 Va. 368, 373 (1998) (steel panels, braces and vinyl liners for a swimming pool), *Baker v. Poolservice Co.*, 272 Va. 677, 691 (2006) (pool drain cover), and *Jamerson v. Coleman-Adams Constr. Inc.*, 280 Va. 490, at 497 (2010) (steel platform and pole), were not equipment or machinery and, therefore, were ordinary building materials. Conversely, the Court determined that the objects at issue in *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 595-96 (2000) (a switchgear and circuit breakers), and *Royal*

4

*Indem. Co. v. Tyco Fire Products, LP*, 281 Va. 157, 168 (2011) (sprinkler heads) were equipment or machinery and, therefore, were not ordinary building materials.

With regard to Code § 8.01-250, we have previously noted that the General Assembly has not provided a definition of "equipment or machinery." *Jamerson*, 280 Va. at 495. Additionally, "definitions of equipment or machinery found in other parts of the Code or administratively adopted regulations . . . cannot adequately address in every instance the distinction . . . between ordinary building materials and equipment and machinery." *Id.* at 495-96. For similar reasons, the ordinary definition of "equipment," while informative, does not provide a workable guide under the statute. The word "equipment" is defined as: "[t]he implements . . . used in an operation or activity; [a]pparatus; all the fixed assets other than land or buildings of a business enterprise." Merriam-Webster's Collegiate Dictionary 423 (11th ed. 2004).[1] This broad definition must necessarily be tempered by the context in which it is used, otherwise an object could qualify as both an "improvement to real property," meaning the object would fall under Code § 8.01-250, and "equipment," meaning it would also be excluded under the same statute.[2] Recognizing the multitude of forms that equipment in its ordinary sense can take, the determination of whether an object is properly classified as "equipment" in the particular context of Code § 8.01-250 is of necessity a multi-faceted issue for which the Court has not found it

---

[1] Potter's assignment of error in this case specifically takes issue with the circuit court's failure to find that the Buell Classifier was "equipment" under Code § 8.01-250. Accordingly, we do not address whether the Buell Classifier is considered "machinery" under the statute.

[2] For example, an electrical panel box has been deemed to be an "improvement to real property" covered by Code § 8.01-250, *Grice*, 236 Va. at 309, as is a drain cover, *Baker*, 272 Va. at 690, and a steel platform and pole, *Jamerson*, 280 Va. at 498. Yet all three of these examples would also meet the dictionary definition of "equipment," in that they are fixed assets that are used in an operation or activity, but they are not land or a building.

prudent to provide a single definition that would apply in every circumstance. Rather than prescribe a single definition, the Court has identified several factors for the lower courts to consider and apply based on the circumstances of each case. Indeed, as we stated in *Jamerson*,

> As reflected in these cases, we have identified various characteristics of the items in question, which, in a specific case, led to the determination that the items were or were not ordinary building materials. Nevertheless, we have not held any single characteristic or set of characteristics as determinative of the issue. Each case has been and must be decided on its own circumstances.

280 Va. at 496.

Consequently, where the issue turns on whether the object is "equipment or machinery," it is appropriate to first analyze the characteristics of the object and determine whether it may be classified as such. If, after considering the various factors, the object does not fit within the classification of "equipment or machinery," then by process of exclusion the object may fall within the non-statutory rubric of "ordinary building materials."

The Court has held that the level of quality control exerted by the manufacturer, the existence of a voidable manufacturer's warranty and the existence of use and/or installation instructions directly from the manufacturer are some of the factors that indicate whether an item may be exempt from Code § 8.01-250. *Cape Henry Towers*, 229 Va. at 602. *See also Grice*, 236 Va. at 309 (considering that the instructions for assembling and installing an electrical panel box were determined by the architect and that no instructions were received from the manufacturer in finding that a panel box was not equipment); *Cooper Indus.*, 260 Va. at 595 (considering the inclusion of an instruction manual by the manufacturer in finding that circuit breakers on a pier were equipment); *Baker*, 272 Va. at 691 (considering that a manufacturer had no role in the installation of a pool drain in finding that the drain was not equipment); *Jamerson*, 280 Va. at 497 (2010) (considering the fact that the installation instructions provided by the

6

manufacturer of a fireman's pole and platform merely consisted of recommendations on what variety of bolts to use in finding that the pole was not equipment). We have further indicated that if the action at bar arises from a non-fungible part of the land or building, this weighs in favor of finding that an object is equipment. *Luebbers*, 255 Va. at 373 (noting that steel panels, braces, and vinyl liners for a pool "served no purpose other than as generic materials to be included in the larger whole" in holding that those objects were not equipment); *see also Baker*, 272 Va. at 690 (finding that a pool drain cover is "indistinguishable from the fungible component parts of the swimming pool" in *Luebbers*). Finally, we have held that fully assembled, independent mechanical devices that are not essential structural components of a structure or building are generally equipment under the statute. *Royal Indemnity*, 281 Va. at 168.

Applying these factors to the Buell Classifier demonstrates that it is equipment under Code § 8.01-250. Notably, BFK exerted control over the installation and maintenance of the Buell Classifier in a manner characteristic of equipment. We acknowledge that the Buell Classifier was not fully assembled when it left BFK, but this was because it was very large and therefore it was necessary to assemble it on site after shipment from the factory. Further, we note that BFK conducted a visual inspection of the Buell Classifier's welds to ensure they were suitable for its intended purpose before it left the factory. Like the circuit breakers found to be equipment in *Cooper Industries*, the Buell Classifier comes with both an installation and operation manual. While there was uncertainty as to whether BFK was involved in the installation of this specific Buell Classifier at Luck Stone, there was evidence that, in approximately half of the installations of these types of classifiers, a representative from BFK comes on site to adjust the device and make sure it is working properly after installation. There

was also evidence presented demonstrating that BFK provides recommended inspection and maintenance for a Buell Classifier throughout its use by the purchaser.

Similar to the sprinkler heads at issue in *Royal Indemnity*, the Buell Classifier is not actually part of the silo; it was added several years after the silo's construction and therefore it is clearly not an essential component of the silo. 281 Va. at 168. Another similarity that the Buell Classifier shares with such items as the sprinkler heads considered in *Royal Indemnity* is the fact that the classifier is somewhat mechanical in nature in that it has louvers that "control the direction and amount of air that comes into the device." If the louvers are not correctly installed and positioned, the Buell Classifier will not function properly. Further, the Buell Classifier "serves an adjunct function in the building" in that it was only necessary as a means of separating sand particles. *Id.* at 167.

Additionally, the Buell Classifier is neither fungible nor generic. *See Luebbers*, 255 Va. at 373. BFK's former CEO and President explained that the Buell Classifier is "not readily available" for purchase. While the Buell Classifier at issue here was not specially designed for Luck Stone, the former CEO said there were only two or three other manufacturers of similar classifiers.[3]

---

[3] While not dispositive, the fact that BFK routinely referred to the Buell Classifier as "equipment" further supports the notion that it was, in fact, a piece of equipment. It is also telling that, during the hearing on the plea in bar, the chief concept engineer at Luck Stone described the Buell Classifier at issue as "a piece of equipment that separates materials" and agreed with Potter that it is a machine that aids Luck Stone in performing a business function. The former President and CEO of BFK also admitted that he refers to the Buell Classifier as "equipment" and that BFK holds it out as equipment that companies like Luck Stone can use in their business functions. Indeed, on the first page of the proposal that BFK sent to Luck Stone regarding the Buell Classifier, it was described under a section labeled "Equipment Recommended." The proposal also stated, "Equipment will be delivered in approximately 12 weeks after receipt of approval drawings." Finally, the invoice for the freight of the classifier referred to the classifier as equipment.

## III.  CONCLUSION

When all of the relevant factors are considered, it is apparent that the Buell Classifier at issue is equipment within the meaning of Code § 8.01-250.  The Buell Classifier is a device used for a specific purpose unrelated to the structural integrity of the building itself.  It has several qualities that we have recognized as being characteristic of equipment: the manufacturer exerts some degree of control over its installation and maintenance, it is not required for the operation of the building, and it is neither fungible nor generic.  Thus, the circuit court erred in sustaining BFK's plea in bar based on its conclusion that the Buell Classifier qualified as ordinary building materials.  Accordingly, we will reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*